[PHILADELPHIA, JANUARY 14TH, 1839.]

## POSTEN *against* POSTEN.

### IN ERROR.

1. The mere circumstance of a father being indebted at the time of making a voluntary conveyance to a child, does not render such conveyance fraudulent and void, under the stat. 13 Eliz., if he had other property at the time sufficient beyond a doubt to pay his debts.

2. In ejectment, where the question is of the validity of a voluntary conveyance in reference to the debts of the grantor, the jury, in estimating the value of the property, may be guided by parol evidence given on the trial, and are not bound by a sheriff's sale of the same property several years after the conveyance.

3. A voluntary conveyance was made to A. by his father. Afterwards a judgment was obtained by B., another son, against the father. After the death of the father a motion was made on the part of the heirs to open the judgment and let them into a defence, which was denied. The land contained in the voluntary deed was levied upon by virtue of an execution upon a judgment for a debt due before the conveyance, and sold by the sheriff to B. An application to the Court had previously been made on the part of A., to set aside the writ of *venditioni exponas* in this case: In ejectment by A. against B. it was *held*, that notwithstanding these proceedings, it was competent for A. to go into evidence to prove that no debt was due to B. by the father at the period of the judgment.

THIS was a writ of error to the Court of Common Pleas of Northampton County, to remove the record of an action of ejectment, brought by William Posten against James Posten, to recover

(Posten v. Posten.)

a tract of land situate in Stroud and Smithfield townships, in the county of Northampton, containing one hundred and fifty acres, or thereabouts.

On the trial, before Judge BANKS, at Easton, on the 29th of August, 1837, the plaintiff gave in evidence a deed to him from his father, Jacob Posten, dated the 18th of December, 1828, and duly recorded on the 20th of the same month, for "a piece of land containing by estimation 106 acres, more or less, being the full half of the farm whereon Jacob Posten now lives, and known and distinguished by the back end of said farm, and embracing the land whereon the new barn was built for the said William Posten, as it has been said," &c. The consideration expressed in the deed was $2000.

The defendant then, for the purpose of proving that Jacob Posten the grantor, was indebted at the time of the said conveyance, which was alleged to be a voluntary one, gave in evidence two bonds from Jacob Posten to John Lee, assigned to Jacob Stroud, dated the 25th of November, 1795, each in the penalty of £66 10s. 8d. with condition for the payment of £33 5s. 4d. on the 16th of April, then next. On each bond was an endorsement signed by Jacob Posten agreeing to pay the amount of the bond to John Starbird and James Hollinshead, executors of Jacob Stroud, deceased, on or before the 1st day of June, 1830; and a receipt dated in June, 1830, for a part of the amount due.

The defendant then gave in evidence certain records, from which it appeared, that on the 26th of March, 1832, judgment was obtained on the said bonds by John Starbird, surviving executor of Jacob Stroud, deceased, against James Posten, administrator, &c., of Jacob Posten, deceased, upon which a *fieri facias* and several writs of *venditioni exponas* were issued. By virtue of a writ of *alias venditioni exponas* the land in question was sold on the 18th of November, 1833, to James Posten, the defendant.

The defendant further gave in evidence a single bill or bond from his father, Jacob Posten, to him, dated August 2d, 1810, for $250, and the record of a judgment obtained by him against Jacob Posten of January term, 1829. From this record it appeared, that on the 20th of January 1832, a motion was made to open this judgment, and let the heirs of the defendant into a defence, and that on the 1st of December, 1832, this rule was discharged.

The defendant further gave in evidence an account settled between him and his father, on the 27th January, 1829, showing a balance due to James Posten, the son, of $3311 62.

The defendant then produced and gave in evidence an affidavit by William Posten, the present plaintiff, made in the suit brought by

Starbird against James Posten, administrator of Jacob Posten, setting forth that a part, viz. one-half of the land levied upon and advertised for sale in that case was conveyed to him by deed duly executed on the 18th of December, 1828; that the residue of the real estate of the deceased was amply sufficient to pay and satisfy the said judgment, and that there were in the hands of the administrator sufficient personal assets for the purpose.

The plaintiff then offered parol evidence to show that the judgment obtained by the defendant against Jacob Posten, his father, was voluntary, fraudulent, and without consideration. The defendant objected to this testimony, but the Court admitted it, and exception was taken.

Evidence having been given to this effect, the plaintiff then proposed to show, that the application in 1832, to open the judgment obtained by James Posten against Jacob Posten was not made on his behalf, but on behalf of Edward Posten, his brother. The Court admitted this testimony, and exception was taken.

The plaintiff then offered in evidence the record of a suit brought by James Posten, the defendant, against Conarroe & Dickinson in 1815, to show that the defendant had dealt with the property on his father's farm as his own. This was also admitted by the Court, and exception taken.

The evidence having been closed on both sides, the defendant's counsel requested the Court to charge the jury—

" 1. That the acknowledgment of Jacob Posten on the bond held by the executors of Jacob Stroud, deceased, did not create a new debt from that time, but by repelling the presumption of payment left the original debt in full force.

2. That the judgment of James Posten on the single bill of 1810 was in point of law, for a debt precedent to the conveyance to William, and that if the judgment No. 73 of January term 1829 was also for indebtedness incurred previously to December 1828, it is also a debt precedent to such conveyance, and if the conveyance tended to delay, hinder, or defeat its collection, it is void.

3. That if at the time of the conveyance of the 18th December, 1828, Jacob Posten was considerably indebted, such indebtedness would avoid the conveyance, more especially if on his death within two years and a half afterwards, his remaining estate did not sell for enough to pay such debts.

4. That the judgment of James Posten and of John Starbird executor of Jacob Stroud deceased are, so long as they remain of record

unreversed and unsatisfied, conclusive evidence of the indebtedness of the deceased, and of the amounts due thereon.

5. That inasmuch as before the sheriff's sale William Posten came into Court and moved to set aside the execution and to stay the proceedings on the execution upon Starbird's judgment, that made him a party or privy thereto so as to make such judgment conclusive on him.

6. That the circumstance of William Posten never having taken or attempted to take possession of the property during his father's lifetime, is a strong circumstance to show the voluntary character of the conveyance.

7. That even if it were agreed on the 18th December, 1828, between Jacob Posten and Benjamin Hornbeck that each would settle $2000 worth of property on their child, that would not be good against creditors at the time, more especially if Hornbeck did not carry his agreement into effect until nearly eighteen months after, or if he could not have been legally compelled to do so."

The learned judge then charged the jury in substance as follows :—

"It is conceded in this cause by the parties, that Jacob Posten, their father, had been seized in fee of the land in dispute. Both parties derive title under him. The plaintiff claims under a deed from his father to him dated 18th December, 1828, which was placed on record on the 20th of the same month and year. This deed is regular upon its face, and is *prima facie* good and sufficient to enable him to recover, unless some valid reason why it did not convey a right to the land has been disclosed on the trial. The validity of this deed has been called in question on the trial, by the defendant, who alleges that it was a voluntary deed made without valuable consideration paid, and void as against the creditors of Jacob Posten. This forms one of the main subjects of inquiry. The defendant sets up a title under a judgment against the father in favour of Jacob Stroud's executors, dated after the deed to the plaintiff. The land was sold on this judgment, and he contends that the title to the land is in him, inasmuch as his father was indebted, at the time of the execution of the deed to the plaintiffs, the said Stroud's executors, and also to him, and that therefore the deed was void as to these creditors. The defendant was the purchaser of the land in dispute at the sheriff's sale. What the defendant has thus alleged in avoidance of the plaintiff's deed is another main subject of inquiry. In the decision of these two points rests the entire controversy, or nearly so. It may be said that the merits of the case are to be found in these two questions.

That the owner of lands or goods may make such disposition of them as he pleases, if it does not interfere with the existing

(Posten *v.* Posten.)

rights of others is the legal consequence of that absolute power which a man possesses over his own property. If such disposition be real and honest it will be valid and effectual to vest the right of property in the grantee or donee. To deny a man this right would deprive him of one of the most dear and valuable rights of absolute ownership. To prevent fraud and enforce a fair dealing between man and man the law has prescribed certain limits to this power of disposition in the owner of property, whether it be real or personal. One limitation is, that no man can so dispose of his property as to defeat his creditors unless it be for consideration paid. Every deed therefore which is not made on a consideration which the law decrees a valuable one, is void as against creditors as a general rule. A deed from a parent to a child is not void because it is a voluntary deed, but because it is a fraudulent deed. It is not the law that every voluntary conveyance by a parent to a child is void even as against creditors. It may and will be void under certain circumstances. The mere fact of the grantor being in debt at the time of the execution of such deed will not avoid the deed. The absence of a valuable consideration is not always fraud in itself. It is a badge of fraud ; and more, it is a strong evidence of fraud. It is not however conclusive evidence. The inference which the law draws from it may be removed by countervailing evidence. It may be removed by showing that the debts were amply secured by mortgages, or that the grantor was not embarrassed, but on the contrary that he was in prosperous circumstances, and that the gift was not more than a reasonable one for a man in his circumstances to make to a child, and that he retained at the time of the gift, an amount of property exclusive of that given, and means ample beyond all doubt for the payment of all his debts. For a voluntary deed is not fraudulent for that reason alone, as to creditors, if their debts are amply secured by mortgage, or if the grantor at the time still has property sufficient beyond all question for the payment of all their claims against him. If a debtor conveys away all his property for any other than a valuable consideration, or so much of it as not to leave enough beyond all doubt for the payment of his debts, such deed is void as to creditors. If such grantor by voluntary deed has at the time of such grant sufficient estate left to pay all his debts beyond all doubt or question, then such deed is not void as to creditors, merely because it was not made for a valuable consideration paid or to be paid. As this point has been urged upon the Court with great zeal and ability by the defendant's counsel, and as I entertain a very decided opinion upon it, I will lay down the law clearly and fully upon it, so that if I am mistaken, it will appear upon the record so plainly, that our error, if we commit one, may be readily corrected. The Court then on this part of the case charge you, That if the deed was made by Jacob Posten to the plaintiff, with intent to defraud, and you so find the facts, then this deed would be void and the

defendant would be entitled to your verdict. Fraud, however, is not to be presumed. The party who wishes to avail himself of it, must prove it. It is not to be presumed in the absence of evidence, much less against evidence. It may, like any other fact be proved by circumstances. And it is proved and to be considered by a jury, whenever such circumstances are in evidence as does convince their minds that it exists. If you find there was no fraud in the concoction or execution of the deed, but that at the time of its execution no consideration was paid, or to be paid, and that the deed was a voluntary deed, and that the said grantor did not then possess property exclusive of that now in controversy beyond all doubt sufficient to pay all his debts, the plaintiff's deed would then be void, and the defendant would be entitled to your verdict. If you believe from the evidence that the deed was not made with a fraudulent intent, or that the grantor, Jacob Posten, was indebted at the time of its exeecution, and that he still possessed other property, besides that so granted, sufficient beyond a doubt to pay all his debts, and the property granted was not more than a reasonable provision for a child, considering the circumstances of the grantor, then the plaintiff's deed would not be void as to creditors, although made for other than a valuable consideration, but then and in that case it would be good and valid and the plaintiff would be entitled to your verdict. We have thus laid down the law as clearly as we could, and you will take it for your government. The plaintiff's is, in point of law, a voluntary deed, and you will so consider it. The Court will now draw your attention to the amount of property claimed and confessedly owned by the father at the time he made the deed to his son William, the plaintiff. It appears by the testimony, and there is no contradiction on this point, that he owned about seven hundred and ninety-five acres of land, that is, six hundred and ninety acres exclusive of that granted to the plaintiff. Some of the witnesses have estimated the value of this land at that time at $9,800—others have valued it at an amount somewhat less. The land in dispute has been, by some of the witnesses valued at $2,000—that would leave land worth $7,800, if you should believe this estimate to be correct. All this land was sold by the sheriff in 1832 and 1833, and then brought the sum of $3,925. The land in dispute brought the sum of $530. Deduct this from the whole amount, it would leave the sum of $3395. The price at which the land sold at sheriff's sale, is evidence, and strong evidence too, of its value at the time of William's deed, and at the time of such sale. Still it is not conclusive evidence. You will then from all the evidence determine for yourselves, what property the old man had at the time of his deed to William, and what its value then was. It would appear that the old man must have possessed considerable personal property at the time of his death, as the administration account of the defendant on his estate exhibits a balance in favour

of the estate of $1021, as settled in 1833. You will first ascertain and determine what property the old man had at the time of his deed to William, and then you will ascertain the amount of his debts at that time. This is necessary to enable you to say whether he had property sufficient to pay all his debts, exclusive of that so deeded to the plaintiff. His debts are, first, the judgment to the defendant for $526. This judgment is on a note dated in 1810. Secondly, the judgment to Stroud's executor for $444. This judgment is on a bond dated in 1795. There is no fact in evidence that invalidates these two debts. You will, therefore, consider them as existing debts against the old man at the time of his deed to the plaintiff. The remaining debt is that of $3,311 64, claimed by James. As to this debt, I will have more to say presently. Your first inquiry will be, had he at the date of William's deed sufficient property left to pay these debts beyond a doubt. If he had, and the deed was not made with intent to defraud, you must go no further, for then the plaintiff would be entitled to your verdict. If in your opinion, he had not property sufficient to pay all these debts beyond a doubt, for if its sufficiency is doubtful that is enough, then you will inquire into the validity and fairness of this large debt claimed by James. The other two judgments amount but to $970. If this was the extent of his indebtedness at the date of his deed to the plaintiff, there would be no doubt of the sufficiency of his property to pay it three times over. This necessarily leads to an inquiry into this large judgment, for without this judgment or debt is sustained the defendant has no ground to stand upon. The judgment is for money due James for wages, as appears by the account stated and which you will have out with you and can examine. This is the foundation of the claim. The plaintiff contends that James had the place rented on the shares from 1810, until the date of William's deed, and that James did not work for wages. This has been a very warmly contested point on both sides. If the view which the Court has taken be correct, it is a point that is decisive of the cause one way or the other. To reach the truth of the matter we let in all the evidence fully on both sides, so that the whole case might come out and be finally determined, if possible, and an end be put to this inveterate and ruinous litigation between these two brothers, a contest which is regretted by all their friends. The defendant's counsel have requested us to charge you upon some points which have been handed to the Court. We charge you as we are requested to do on the 1st, 2d, 6th and 7th points. To the 3d point we answer: If Jacob Posten in 1828 at the date of the deed to William had property enough left, exclusive of that granted to William, beyond a doubt, to pay all his debts, and such grant was not intended to defraud, then the deed would not be void. But if at that time he had not property left exclusive of the land so granted sufficient beyond a doubt to pay all his debts, or if such grant was made with

(Posten *v.* Posten.)

intent to defraud, then, and in either case, the deed would be void. To the 4th point. In this case we charge you that the small judgment of James and that of Stroud's executors are conclusive evidence of the indebtedness of Jacob Posten to the amount of said two judgments at the time he executed the deed to William. The judgment of James for $3311 62 has been contested. This judgment is situated differently from the other two. The settlement between James and the old man by which this sum is found due to James was made after the plaintiff's deed was executed and recorded. William was no party to that settlement nor is he bound by it. He was at liberty on this trial to show that no part of the money was owing by the old man to James at the time he received his .deed. He was not a party to the judgment nor is he bound by it. On this trial we gave him an opportunity to show that the money was not due by his father at the date of the deed. We also gave the defendant an opportunity to show that it was. If this money was not due at the time the plaintiff got the deed, then this judgment does not invalidate his deed. If it was due at that time it would invalidate the deed. Whether this money was owing by the old man to James at this time you will decide from all the evidence. The judgment is not conclusive that the old man did at that time owe this money. On this trial the plaintiff first had the privilege of showing that this debt was not due. The plaintiff contends that it is fraudulent as to him. This he might now show. He is not estopped by the judgment from disproving the justice of the claim as to his rights. He might have shown that although the debt had been a just one, yet it had been fully paid. He might also show that it ought not to be paid out of his lands as a fund, or that no money had ever been due on the contract until after he got his deed, and that it was an arrangement to defeat his right to this land under the deed of the father. It would be dangerous in the extreme, if the law were that a grantor by a voluntary deed could give a judgment after such grant that would not only bind him but would also bind such grantee. A judgment binds parties and privies. If a man purchases at sheriff's sale and sees on record that the defendant had aliened the land so purchased by him prior to the judgment under which he buys, he is bound to know that he runs the risk of the title: in such case the grantee is not bound by the judgment but may controvert the debt as far as is necessary to secure his rights. William never had a hearing or trial as to how far he should be affected by the debt. It is therefore not reasonable that a hearing and trial should be denied him; much less is it so, that he is bound by it without a hearing. If then you believe that this debt was not a subsisting debt at the time the plaintiff received his deed; that James had the place rented on the shares, and that the contract was changed after the plaintiff's deed, then this judgment would not be conclusive evidence of the indebtedness of the old man at the time of his grant

to the plaintiff. If on the other hand you believe that this debt was due at the date of the plaintiff's deed, then this judgment would be valid and good against this deed. In answer to the 5th point: We have already said that the Starbird judgment was conclusive evidence as to that debt against the plaintiff. But if the $3,311 62 judgment is not sustained, how will the matter stand ? The Starbird judgment together with the small judgment of James amounted to but $970. This amount was in the hands of James, the administrator before and at the time of sale. His account as settled, shows a balance of $1,021 in his hands from the personal estate of his father. All the rest of the real estate was sold before the land in dispute and brought $3,395. This with the balance on administration account would amount to the sum of $4,416. If this large judgment is not taken as valid, then there would be money enough raised on the sale to have paid this three times over, with what was in the administrator's hands. Unless this debt is established, there would be no legal pretence to sell this land. All the other land of the deceased was bound for these two small judgments. These lands were sold and the money made far beyond their amount. Where then would be the right to sell this land ? That judgment was not a lien upon this land, but in the event that William's deed was fraudulent as to creditors. If this large judgment is removed, the old man's funds would have been so ample for the payment of his debts, that fraud could not be presumed from the fact that William's deed was voluntary. Not only would his estate have been ample, but the amount of this debt and much more had actually been raised, and was in the hands of the officers of the Court, by the sale of these lands on execution process. Without this large judgment, we repeat, that as this case is circumstanced, there could be no pretence for selling this land. The plaintiff applied to the Court to set aside the execution and stay the proceedings on the executions issued on the Starbird judgment. It is now insisted that this made him a party or privy thereto, so as to make such judgment conclusive on him. Although that judgment was conclusive on him as to the debt, yet if they sold his land on it, when they had no legal right to do so, that sale would give no title. Here his claim to this land was on record, and he also gave notice at the sale of his right. Although he did apply to the Court, his application was denied him. He had not then the benefit of a jury trial on the facts which constitute the merits of the case. Why may he not try them now in this ejectment? If this application estops him forever as to his rights, it will be giving as much force to the decision of a Court, made on an application to its discretion, as the law gives to two verdicts and two judgments in favour of the same right in ejectments. I do not think this is the law. If it is I am greatly mistaken. If I am mistaken, I trust I have put my opinion so fully on the record that the party will sustain no injury by it, but can have it corrected in a higher Court."

The jury under this charge found for the plaintiff; and the defendant took a writ of error, and filed the following exceptions.

"1st. The Court erred in admitting testimony to invalidate the settlement made between James Posten, the above plaintiff in error, and his father Jacob Posten, and the judgments confessed thereon by the said Jacob Posten to the said James, as contained in the several bills of exception taken.

2. The Court erred in admitting the testimony of Alexander Brown, Esq.

3. The Court erred in admitting in evidence the record of the suit between James Posten and Conarroe & Dickerson.

4. The Court erred in so much of their charge as related to the intent and consideration of the deed from Jacob Posten to William Posten.

5. The Court erred in so much of their charge as related to the value of the property and indebtedness of Jacob Posten at the time of making the said deed.

6. The Court erred in directing the jury to calculate from parol evidence in the cause, the value of Jacob Posten's property, in order to judge of its sufficiency or insufficiency to pay his debts; the actual sale of said property by due course of law, being the best evidence and conclusive as to the fraud upon creditors.

7. The Court erred in all they said in relation to the alleged contracts between Jacob Posten and James Posten, and the indebtedness of the former to the latter.

8. The Court erred in their answers to the 3d, 4th, and 5th, points propounded to them by the counsel for plaintiff in error, and should have affirmed the same."

Mr. *Porter*, for the plaintiff in error.—There are two principal questions in this case.

1. Whether in ejectment by an heir claiming under a voluntary deed from the ancestor, against a purchaser at sheriff's sale under a judgment against the legal representatives of the grantor, it is competent for the plaintiff to go into an investigation of the merits of that judgment, and of other judgments against the decedent to which the proceeds of the sale have been applied.

2. What is the effect of a voluntary conveyance, where the grantor is indebted at the time?

1. The evidence shows that the plaintiff below and the other heirs, had full opportunity to be heard against the claim of James Posten, and that they were actually heard, and the matter decided against them. The plaintiff then comes within the rule laid down in 1st

(Poston v. Posten.)

*Starkie*, 254, that " a person who is a party to the proceeding, or who might have been a party to it, cannot show even collusion, to repel such judgment." *Purdham* v. *Phillips*, (*Strange*, 2.) *Ambler*, 763. *Peake's Evidence*, 63. William Posten was one of the heirs; and the application to open the judgment was made at the instance of " the heirs" generally. He held land under Jacob Posten, and was therefore a privy to the judgment. It was in evidence that he knew of the application, and inquired into its progress. He was therefore bound by it. *Sanders* v. *M'Cracken*, (*Hardin*, 260.) *Sunderson* v. *Jennings*, (1 *Marsh. Rep.* 179.) The cases which say that a judgment is not evidence against third persons, proceed on the ground that against such persons a verdict and judgment in a civil case are no evidence whatever. (*Peake*, 72.) This class of cases does not affect the question of conclusiveness when admitted. But there are cases in which a judgment against third persons must be given in evidence as a foundation for certain proceedings. In such a case it obtains its validity from being the judgment of a Court of competent jurisdiction, and all the reasoning on the subject of conclusiveness is applicable to it. Such would seem to have been the view of the legislature in passing the act of 1705, which declares that the reversal of a judgment shall not affect the title of a purchaser at sheriff's sale. Under this act it is settled, that a purchaser at such sale is not affected by the irregularity or illegality of the judgment. *Hiester* v. *Fortner*, (2 *Binn.* 140.) *Burd* v. *Dansdale*, (*Id.* 80.) *Neff* v. *Barr*, (14 *Serg. & Rawle*, 170.) *Jones* v. *Gardner*, (4 *Watts*, 417.) *Stiles* v. *Bradford*, (4 *Rawle*, 401.) *Lewis* v. *Smith*, (2 *Serg. & Rawle*, 142.) (*Bank* v. *Meason*, 4 *Watts*, 345.) *Bond* v. *Gardner*, (4 *Binn.* 281.) So the record of an eviction is conclusive evidence against the grantor in a deed containing a general warranty, where he has had notice of the pendency of the suit. *Leather* v. *Poultney*, (4 *Binn.* 356.) *Bender* v. *Fromberger*, (4 *Dall.* 436.) *Ives* v. *Niles*, (5 *Watts*, 323.) A person who may be prejudiced by such judgment is not without remedy, since he may be let into a defence if he apply within a reasonable time. *Neff* v. *Barr*, (14 *Serg. & Rawle*, 170.) *Kalbach* v. *Fisher*, (1 *Rawle*, 323.) *Durand* v. *Halbach*, (1 *Miles*, 46.) *Redenbach* v. *Redenbach*, (1 *Rawle*, 362.) *Brown* v. *Simpson*, (2 *Watts*, 239.) In a scire facias on a judgment the defendant cannot go into evidence to show that the money was not due. *Cardesa* v. *Humes*, (8 *Serg. & Rawle*, 68.) *Wilson* v. *Hurst*, (1 *Peters's C. C. Rep.* 441.) Nor is this admissible on proceedings before two justices of the peace under the act of assembly, and certified into Court upon a claim of property. *Hale* v. *Henrie*, (2 *Watts*, 143.) In *Wilson* v. *Watson*, (1 *Peters's C. C. Rep.* 269,) it was held that a plaintiff need not sue out a *scire facias* against the heirs or terre-tenants of the debtor, in order to charge the land. The conclusiveness of a judgment upon the facts contested, is also shown by *Marsh* v. *Pier*, (4 *Rawle*, 289.) *Kelheffer* v. *Hare*, (17

*Serg. & Rawle*, 322.) *Benson* v. *Burgot*, (10 *Serg. & Rawle*, 241.) *Field* v. *Gibbs*, (1 *Peters's C. C. Rep.* 157.) *Turbox* v. *Hays*, (6 *Watts*, 398.) *Thompson* v. *O'Hanler*, (*Id.* 493.) *Hoffman* v. *Coster*, (2 *Wharton's Rep.* 471.) *Homer* v. *Fish*, (1 *Pickering*, 439.) *M'Neil* v. *Bright*, (4 *Mass. Rep.* 300.) *Loring* v. *Bridge*, (9 *Mass. Rep.* 124.) *Pickens* v. *Fairfield*, (11 *Mass. Rep.* 228.) It will be said however, that evidence is admissible to prove *fraud* and *collusion*. The leading authority on this point is *Fermor's Case*, (3 *Rep.* 77,) which, however, confines the rule to a case of collusion where the person affected could not be heard either as party or privy to the original proceedings. In *M'Donald* v. *Mulhollan*, (5 *Watts*, 174,) it was held, that a judgment on a mortgage could be avoided collaterally only for collusion. The tendency of the decisions for many years past has been to refer all claims for relief against judgments, whether obtained fraudulently, or where, as in the present case, the question was as to the quantum of the debt, to the Court in which judgment was entered. *Arnold* v. *Gorr*, (1 *Rawle*, 223.) Here William Poston was a party or privy to the proceedings in the legal understanding of those terms. The judgment under which the property was sold was that of Starbird, and the judgment which they were permitted to contest was that of James Posten. The testimony offered and admitted was not calculated to establish fraud or collusion, and the defendant below was compelled to go into an investigation and defence of his judgment after the lapse of ten years from its date.

2nd. The deed to William Posten was *voluntary*, that is without valuable consideration to the grantor, and consequently in Jacob Posten's state of indebtedness, as shown by the testimony, void as to creditors. A voluntary deed by a person indebted at the time, to *any* amount, is fraudulent and void as to prior creditors, merely upon the ground that he was so indebted. *Ridgway* v. *Underwood*, (4 *Wash. C. C. Rep.* 137.) Where a person who is indebted makes a voluntary settlement, it is clearly void as to his creditors, by statute of 13 Eliz. And Lord HARDWICKE has said, " I have hardly known one case, where the person conveying was indebted at the time of conveyance that has not been deemed fraudulent." *Russel* v. *Hammond*, (1 *Atk.* 15 ; 3 *Cruise's Dig.* 376.) The intent " to hinder, delay and defraud creditors, &c.," will be presumed from the circumstance of the party conveying being indebted. *N. A. Land Co.* v. *Gilmore*, (1 *Peters's C. C. Rep.* 464.) Now what was Jacob Posten's situation, when this deed was made ?— Beside his small debts, he owed the debt on which the Starbird judgment was founded, and also the debt to James Posten, which a subsequent judicial sale of the whole property he had when the deed was made did not satisfy. Yet the judge charged the jury, that the first matter for them to consider (after being satisfied that the deed was voluntary) was, whether Jacob Posten had, when he made

(Posten v. Posten.)

the deed, property sufficient to pay his debts; and recapitulated to them the parol calculations made by the witnesses as to its value, from which they were to decide. If they were satisfied he was able, they need go no farther. And, they did not. In this there was a manifest error. Mr. Atherley, in his learned work on marriage settlements, (p. 217,) answers the question, " can a *prior* creditor set aside a *voluntary* settlement without regard to the amount of his debt ?" in the affirmative, and says : " Indeed it would be absurd to make the amount of the debt the criterion by which to judge of the fraudulency or *bona fides* of the settlement. Nor do I find a single case in which it was done. On the contrary, in all the cases I meet with, a voluntary settlement has been uniformly considered as void against a prior creditor, without at all regarding the *amount* of his debt. If the settlement stands in the way of his recovering his debt it is fraudulent and void." Chancellor KENT, reviewing in *Read* v. *Livingston*, (3 *John. Ch. Rep.* 490,) all the decisions, says, " All the cases assume the position to be undeniable, that the hus-, band must not be indebted at the time of the settlement. *They leave no possible doubt on the point ;*" and he refers to *Walker* v. *Burrowes*, (1 *Atk.* 93.) *Beaumont* v. *Thorpe*, (1 *Ves.* 21.) *Lord Townsend* v. *Windham*, (2 *Ves.* 1) ; in regard to which he says, " Lord HARD-WICKE expressed himself in the most explicit and decided manner. He said that he took it that a man ' actually indebted, and convey-ing voluntarily, always meant to defraud his creditors.' I under-stand him to mean here, that this was the conclusion of law, not to be gainsayed." Farther he says, that " another Master of the Rolls had before said in *Taylor* v. *Jones*, (2 *Atk.* 600,) that the *circumstances* of the settler at the time of the settlement were not material, except as to the question of actual intentional fraud, and *that* intention we know is never the inquiry in respect to the demands of prior creditors." And finally, after reviewing all the cases, he says,—" The conclusion from the cases is, that if the party be indebted at the time of the voluntary settlement, it is pre-sumed to be fraudulent in respect to such debts ;. and no *circum-stances will permit those debts to be affected* by *the settlement,* or *repel the legal presumption of fraud.* The presumption of law in this case does not depend *upon the amount* of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such line of distinction set up or traced in any of the cases. The attempt would be embarrassing, if not dangerous to the rights of creditors, and prove an inlet to fraud. The law has therefore wisely disabled the debtor from making any voluntary settlement of his estate to stand in the way of his existing debts." It is true that it has been decided by this Court, that the phrase " indebted at the time," should be taken with some limitation, and could not mean a man indebted for a night's lodging, or a hat. *Mateer* v. *Hissim*, (3 *Penn. Rep.* 162.) But here the creditors at the

time of the deed could not make their debts out of the whole property, including this in dispute. They took the only course the law allowed, viz. had it judicially sold; and the whole proceeds of the sale did not reach to satisfy the judgment of James Posten. Now in *Thompson* v. *Dougherty*, (12 *Serg. & Rawle*, 454-5,) Judge DUNCAN says, " It is an obvious consequence, that if a man who is indebted conveys away his estate, and defeats the existing debt, this is fraudulent." Again; " Where there is a voluntary settlement and indebtedness at the time, and the recovery of these debts is *delayed*, *hindered*, or defeated, such settlement is fraudulent and void, and the avoidance of it on account of such indebtedness lets in the subsequent creditors on the property to satisfy their debts."

Mr. *Hepburn* and Mr. *Ihrie* for the defendant in error.—The evidence abundantly shows, that at the date of the conveyance Jacob Posten was free from debt. The defendant was obliged to go into the consideration of the judgment obtained by him, in the attempt to prove its priority to the plaintiff's deed, and therefore we were authorised to investigate its fairness. The opinion of the Court in *Hoffman* v. *Coster*, (2 *Wharton's Rep.* 473,) and other cases, shows, that though a judgment cannot be inquired into, yet it will not be allowed to operate to the prejudice of third persons. William Posten was neither party nor privy. He had no day in Court. We do not question the authority of the judgment, but the alleged fact of the consideration. There are many cases to show that judgments may be inquired into for fraud, collusion, and want of consideration. *Barr* v. *Gratz*, (4 *Wheat.* 213.) *Musser* v. *Strickland*, (17 *Serg. & Rawle*, 360.) *Hall* v. *Hammond*, (2 *Watts*, 354.) *Townsend* v. *Kerns*, (*Id.* 180.) *Read* v. *Lawton*, (*Id.* 50.) 1 *Phillips Ev.* 261. *Borden* v. *Fitch*, (15 *Johns.* 137.) *Riddle* v. *Murphy*, (7 *Serg. & Rawle*, 230.) *Cowan* v. *Getty*, (5 *Watts*, 531.) The plaintiff had nothing to do with the application to open the judgment. The evidence shows that it was made on behalf of the other heirs. In *Nace* v. *Hollenback*, (1 *Serg. & Rawle*, 548,) the Court went into an inquiry who were the real parties. In *Brown* v. *Simpson*, (2 *Watts*, 233,) the principle was decided, that even if he had made application, he would not have thereby become a party to the record. In *Glassel* v. *Wilson*, (4 *Wash. C. C. Rep.* 59,) Judge WASHINGTON refused to let a person claiming by an adverse title come in and connect himself in any way with the case. *Ulrich* v. *Voneida*, (1 *Penn. Rep.* 245.) *Reinhart* v. *Kimbock*, (6 *Watts*, 93.)

2. The cases, both American and English, show that a voluntary conveyance may be good, although the grantor was indebted at the time, if the indebtedness bore only a small proportion to the amount of his estate; 2 *Hovenden on Frauds*, 74, note 42, where the

(Posten *v.* Posten.)

American cases are collected, (*Id.* 76.336.) *Thomson* v. *Dougherty*, (12 *Serg. & Rawle*, 457.) *Mateer* v. *Hissim*, (3 *Penn. Rep.* 160.) Here the evidence proved abundantly, that Jacob Posten was comparatively wealthy when he made the conveyance. At the lowest valuation he was worth six or seven thousand dollars. It is a hard and strange doctrine to say that a man worth that amount of property, and indebted to the extent of only $900 cannot advance a son to the value of $500. Judge BANKS, in his charge to the jury, uses the very language of the Court in *Chambers* v. *Spencer*, (5 *Watts*, 404.) In *Salmon* v. *Bennett*, (1 *Conn. Rep.* 525,) it was held, that a conveyance may be good, although there are existing creditors. The judgment of James Posten was certainly a voluntary one; and between volunteers the first in time will be preferred.

Mr. *Meredith*, in reply.

1. The plaintiff certainly stood in the relation of privy to the judgments, as heir to Jacob Posten. Here there was no *collusion* alleged, and therefore many of the cases cited on the other side do not apply. In a case of alleged *imposition* merely, strangers cannot interfere. It is said that the defendant himself went behind the judgment, and therefore the plaintiff was authorised to impeach it. It is every day's experience, that the foundation of a judgment is inquired into, where the declaration does not state precisely the cause of action, but the judgment is not the less conclusive in respect to the points decided. The plaintiff here stood by, at all events, and saw the money arising from the sale of the land of the intestate distributed, and this was a fraud upon the executor of Stroud.

2. The true question is, was the voluntary conveyance to the plaintiff good against the estate of *Stroud*. We say that he was indebted to an extent which, if the sheriff's sale is to be taken as any test of the value of the property, rendered him insolvent. If it was not competent for the plaintiff to go into evidence to impeach James Posten's judgment, there is no question left, since the indebtedness was sufficient, according to all the authorities, to invalidate the conveyance. But supposing the debt to James to be subsequent, yet the previous claims were sufficient. The rule in England is, that as respects *prior* creditors, every conveyance is a fraud. The only way is to secure the debt by mortgage or to pay it off. The case of *Geiger* v. *Welsh*, (1 *Rawle*, 349,) affirms the English doctrine, that creditors are entitled to set aside a voluntary conveyance without reference to the value of the estate. The policy of the law is to prevent injury to creditors; and the only way to accomplish this is to declare all such conveyances void. If a parent wishes to provide for a child, he should either pay off his debts, or secure them in some way.

(Posten *v.* Posten.)

The opinion of the Court was delivered by

SERGEANT, J.—The rule laid down by the Court below in relation to voluntary settlements by persons indebted at the time, is that which has uniformly obtained in Pennsylvania, as well as in some other states of the Union, and is not without countenance in later times, even from the.English Courts of common law. The strict doctrine of the English Court of Chancery, adopted in New York and several other states, that if a person be indebted at the time, a voluntary settlement is fraudulent and void against existing creditors, unless their debts be first paid or secured by mortgage, has proved too severe to be generally received. See the note to 2 *Kent's Comm.* 442, last edition, where the doctrine is examined and the cases are referred to. The point has, however, too often been settled here to admit of contest now, even supposing, which I am not inclined to admit, that the strict rule is as well adapted to the situation and policy of our country. In *Blair M'Clenachan's Case*, (2 *Yeates*, 503,) SMITH, J. says, a man must have an ample estate at the time he makes voluntary conveyances of a large part of it to his children : so that if he be in debt at the time, his creditors may not thereby, in the common course of dealing, have the security of their debts rendered precarious. In *Mateer* v. *Hissim*, (3 *Penn. Rep.* 164,) it is said by HUSTON, J., in delivering the opinion of the Court, that the st. 13 Eliz. c. 5, does not render void a conveyance made by a man, simply because he is indebted. There must be a debt bearing some proportion to the property retained, which may render its payment doubtful. In *Chambers* v. *Spencer*, (5 *Watts*, 410,) the point again arose, and it was held, that the mere circumstance of a father being indebted at the time he made a voluntary conveyance to a child, did not render such conveyance fraudulent and void under the stat. 13 Eliz., if he had other property at the time sufficient beyond a doubt to pay his debts. This was the doctrine laid down by the Court below in their charge to the jury in the present case, and is in our opinion the established law in this state in relation to voluntary settlements by persons indebted.

Another error assigned is, that the Court below allowed the plaintiff to go into evidence that no debt from the father to James Posten existed when the settlement took place between them on the 27th January, 1829, on which judgment was confessed of the 26th March, 1832. The defendant insists that this judgment is conclusive evidence of the debt, for which it was rendered ; but if this be so, the plaintiff's land might be sold under a judgment confessed subsequently to his deed for a debt alleged to be prior, although he could prove that the debt was feigned, and the judgment covinous and fraudulent as to him. This is certainly not the rule of law, nor of justice. If a judgment between other persons be given in evidence to affect the rights of a third person, neither party nor privy to the

judgment, he may show that it was set on foot by covin, and thus avoid it. The plaintiff here was neither party nor privy in respect of land which he held by a previous deed from the father.

The defendant on the trial gave in evidence, that on the 20th January, 1832, a motion was made to open the judgment No. 73 of January Term, 1829, *James Posten* v. *Jacob Posten*, for $3,311 62, with interest, and let the defendant's heirs into a defence, on which, on the 24th March, 1832, the counsel for the heirs entered a rule to take depositions, which rule was discharged on the 14th of December, 1832. The plaintiff subsequently offered William Brown to prove by whom the application to open the judgment was made, and that the plaintiff had nothing to do with it; and his admission is now assigned for error.

It is contended, that as William Posten was one of the sons and heirs of Jacob Posten, this rule and the decision of the Court upon it, estop him from showing that he was not in anywise participator in the proceeding. Supposing that it might estop him as heir, yet he stood at the time, and now claims, not as heir, but as alienee, by a deed prior to the judgment, and this right he would not be precluded from asserting by a proceeding conducted in another capacity. The heirs might have objections to the judgment, because it would affect the assets coming to them, and they might on that ground alone move to set aside the judgment altogether; but the plaintiff as alienee was not interested in setting the judgment altogether aside; it might remain in force between the parties and their representatives, and yet as to his land be covinous and ineffectual.

It is not easy to see what influence this proceeding could properly have in the present ejectment, unless as an argument that an application to set aside the judgment having failed, the plaintiff's present allegations and evidence against it, possessed less weight with the jury than they otherwise would have had. But whether that or any other inference could be drawn from the proceeding, the plaintiff had a right to rebut it, by showing it was at the instance of other heirs, and that he was not concerned in it.

The defendant, on the trial, also gave in evidence, that on the 21st January, 1833, the plaintiff, William Posten, obtained a rule to show cause why the writ of *venditioni exponas* on which the sheriff sold the tract in dispute, should not be set aside, and the levy made on the *fieri facias* on the property claimed by William Posten, which rule was afterwards discharged. The defendant contended that this proceeding made William Posten a party or privy, so as to make the judgment conclusive on him. This position appears to me to be entirely misconceived, and that on the contrary the plaintiff, in his character of alienee, had merely mistaken his remedy, in applying to the Court to set aside the *venditioni* and levy. He could not in this way have the question of title to the land in dispute determined, and it is the constant practice of the Court to refuse to

entertain a motion of this kind by one who is not a party or privy to the judgment, but a third person claiming by title paramount to the judgment and execution, and to leave the parties to their ejectment. This was decided in *Glascock's Adm.* v. *Wilson's Adm.* (2 *Wash. C. C. R.* 59,) where there was a rule to show cause why the levy and sale of land on *venditioni exponas* should not be set aside. The parties applying to the Court connected themselves with the proceedings only by showing title to the land, and that it was better than that of the defendant in the execution. "But," said WASHINGTON, J., "is this an inquiry proper for the Court to enter upon under the rule? Is it competent to this Court to decide such a question? We think not. In cases like the present, or where they are complicated, and particularly if there be contradictory evidence, we should think it most proper to leave the parties to contest their rights in a more regular course of proceeding on the law or equity side of the Court." It must be presumed, therefore, that the Court, in discharging this rule in the case before us, did so because the application was irregular, and they could not legally entertain it; and that so far from deciding any thing which bound the plaintiff, they expressly refused to hear the matter. It would therefore be extremely unjust to give it an operation against the plaintiff's claim in this ejectment.

It is further alleged, that the Court erred in directing the jury to calculate from parol evidence in the case the value of the grantor's property, whereas the actual sale by process of law was the best evidence of the value, and conclusive. In this, however, we think the Court were right. It is the value of the remaining property at the time of the conveyance which is in question, and of this, a sheriff's sale some five or six years afterwards is, as the Court below stated, evidence, and strong evidence, of its value at the time of the deed and time of sale. It is obvious, however, that it is not conclusive, because the value may have materially changed in the mean time, from the fluctuations of the currency, and other circumstances, as well as because sheriff's sales are often below the market value. The price bid at the sheriff's sale therefore ought to be open to explanation.

The record of the suit by James Posten against Conarroe & Dickerson, was offered by the plaintiff to show that the defendant had dealt with the property on the farm as his own, and that he employed the team in hauling ship-timber for Conarroe & Dickerson, for the price of which he brought suit against them. For this purpose the record was a link in the chain of evidence, going to show the acts and conduct of James Posten in managing the farm on his own account, and is the best evidence to show a demand in that capacity against one for whom he worked.

Judgment affirmed.