## JONES v. WILKEY.

(Circuit Court, W. D. Pennsylvania. January 27, 1897.)

1. PAYMENT—INSTRUMENT UNDER SEAL—PRESUMPTIONS.
    A shorter period than 20 years, aided by circumstances, may furnish ground for inferring payment in fact of an instrument under seal.

2. JUDGMENTS—EFFECT AS TO STRANGERS.
    One not a party or privy is never concluded by a judgment against which he had no opportunity to defend.

3. SAME—PARTIES AND PRIVIES.
    A son who holds land under a deed from his father, in respect of that land is neither party nor privy to a subsequent judgment obtained against the administrator of his father's estate in a suit in which the widow and heirs were not joined as defendants.

This was an action of ejectment by Eliza J. Jones against Philip Wilkey. A jury was waived, and the case was tried by the court.

Edw. Campbell and J. M. Garrison, for plaintiff.
Knox & Reed and R. H. Lindsey, for defendant.

ACHESON, Circuit Judge. Both parties claim title to the land in dispute through James Wilkey, their father. By deed dated January 4, 1883, James Wilkey conveyed the land to his son, the defendant, Philip Wilkey, for the use of Philip during his life, and after his death to the use of his (Philip's) children. James Wilkey died November 7, 1883, intestate. On July 7, 1888, John Wilkey, another son of James, brought suit in the court of common pleas of Fayette county, Pa., against Catherine Wilkey, as administratrix and widow of James Wilkey, and the heirs of James, upon a note under seal, for $1,684.51, purporting to be signed by James Wilkey, dated March 15, 1869, and payable to him, John Wilkey, one day after date. Catherine Wilkey having died on July 14, 1891, letters of administration upon the estate of James Wilkey issued to Samuel H. Dunshane, who was substituted as defendant in said suit. On March 28, 1893, the plaintiff in the said suit, by leave of court, struck from the record the names of the heirs of James Wilkey (including the name of Philip Wilkey); and the cause then proceeding against the sole remaining defendant, Samuel H. Dunshane, the administrator, a verdict was rendered in favor of the plaintiff for $2,541.13, and on April 4, 1893, judgment on the verdict was entered. By virtue of a writ of vend. ex. issued under this judgment, the sheriff of Fayette county, on August 5, 1893, sold the land in dispute, for the consideration of $75, to Eliza J. Jones, the present plaintiff, and on December 14, 1893, the sheriff executed and delivered to her a deed for the premises. As plaintiff in this ejectment, Eliza J. Jones claims title to the land in dispute under the sheriff's deed.

In her abstract of title, the plaintiff set forth that the deed of her father, James Wilkey, to her brother Philip, was made and accepted for the purpose and with the intent of delaying, hindering, and defrauding the then-existing creditors of James Wilkey; and, in her answer to the defendant's abstract of title, she set forth that the deed to him was made "especially to delay, hinder, and defraud John

Wilkey, to whom said James Wilkey was then indebted in a large sum of money." In support of these allegations, upon the trial of the case, and as part of her proofs in chief, the plaintiff introduced evidence tending to show that, at the date of the deed from her father to Philip, her father was indebted to John Wilkey. She put in evidence the above-mentioned judgment, and also another judgment in the court of common pleas of Fayette county for $1,631, obtained on April 3, 1894, by John Wilkey against Samuel H. Dunshane, administrator of James Wilkey, deceased, in a suit brought December 4, 1890, upon a note under seal for $1,000, purporting to be signed by James Wilkey, dated April 1, 1871, and payable to him, John Wilkey, one day after date. As part of her case in chief, the plaintiff also put in evidence the original notes upon which these judgments were obtained; and she called and examined John Wilkey to show that, at the date of the deed from James Wilkey to Philip, the former was indebted to him (John) upon said notes and otherwise, and that the father had no property left after the conveyance to Philip Wilkey. Upon the question of the alleged indebtedness of James Wilkey to John Wilkey on January 4, 1883 (the date of the deed to Philip), the evidence is conflicting; but the weight of it, I think, is with the defendant. The evidence, direct and circumstantial, considered as a whole, fully justifies these conclusions, namely: That, at the date of the deed from James Wilkey to his son Philip, James Wilkey was not indebted to his son John, and that said deed was not intended to delay, hinder, or defraud creditors, but was made by James, and was accepted by Philip, in perfect good faith. In accordance with these conclusions will be the finding of the court in the issue between the parties to this ejectment.

Here this opinion might well end, but one or two observations touching certain points may not be out of place. The above-mentioned notes being under seal, a presumption of payment from mere lapse of time does not arise, as suit was brought thereon within 20 years after maturity. They were, however, very stale claims when proceeded on; and it is well settled that a shorter period than 20 years, aided by circumstances, may furnish ground for inferring payment in fact. Tilghman v. Fisher, 9 Watts, 441; Brigg's Appeal, 93 Pa. St. 485; Walls v. Walls, 170 Pa. St. 48, 32 Atl. 649. Weighty circumstances in aid of such inference appear here. Immediately after the conveyance to Philip, and undoubtedly with a view of invalidating it, John Wilkey instituted a proceeding to have his father declared a lunatic, wherein he failed. Why did John take that step if these notes were valid outstanding obligations of his father? Why did he not then put them in suit, and attempt to enforce them against this land, instead of waiting until his father was dead? Again, some years before the date of the deed to Philip, John got from his father an undivided one-half (worth, it would seem, $4,000) of the "Keeper's Property," and also "some bank stock." Furthermore, at some date, between 1880 and 1883, James Wilkey gave to John $8,000. It would seem, indeed, that this money was in the nature of a testamentary gift, for about that time the father determined to divide his estate among his children in accordance with a

scheme of distribution contemplated by his will previously executed and then destroyed. In that division, John got the $8,000, and Philip and his children got the farm, the subject-matter of this ejectment. And here mention must be made of a significant fact testified to by Alfred Whaley This witness states (truly, no doubt) that these old notes were once shown to him by John Wilkey, who cautioned him not to tell his father that he held them, for, if he did, his father would not give him (John) anything out of his estate. If these notes had not been actually paid or canceled in some way, why should their existence be concealed from James Wilkey? Is it not plain that, when the father divided his estate among his children, it was the mutual understanding of himself and John that these notes were out of the way? In view of the conduct of John Wilkey, can it be credited that he had any valid claim against his father upon these notes when Philip got his portion of his father's estate? Finally, after this suit was brought, the plaintiff herself solemnly declared, in the hearing of her nephew Isaac Wilkey, and under impressive cir- cumstances, "that John hadn't done as he promised to with her, and that these notes were not good, and that she didn't believe that grandpap owed him anything." The plaintiff denied that she had ever said that the notes were forgeries, but she did not deny that she made the above statement, testified to by Isaac Wilkey.

The plaintiff's counsel, however, notwithstanding the issue of fact raised by the abstracts of title, and the course which the trial took, contend that the above-recited judgments conclude the defendant. But it is a fundamental principle that judgments conclude only par- ties and privies, and one not a party or privy is never bound by a judgment against which he had no opportunity to defend. Rittis- paugh v. Lewis, 103 Pa. St. 1. Thus, in an ejectment against the terre-tenant of mortgaged premises by the purchaser at a sheriff's sale, the defendant may avail himself of any defense he might have made if he had been a party to the scire facias suit. Mather v. Clark, 1 Watts, 491. So, the owner may defend on original grounds in eject- ment by the purchaser at a sheriff's sale under a judgment upon a mechanic's lien (Christine v. Manderson, 2 Pa. St. 363), or under a judgment upon a municipal claim, in a procedure to which the owner was not a party (Delaney v. Gault, 30 Pa. St. 63). Now, as *heir*, Philip Wilkey would have the right to contest John's claims on orig- inal grounds, whether sued with the personal representative or brought in afterwards by scire facias. Sample v. Barr, 25 Pa. St. 457. Considered, however, solely as *grantee*, Philip stands in no privity whatever to the judgments here set up. Posten v. Posten, 4 Whart. 27, 42. There the court, in overruling an assignment of error to the allowance by the trial court of proof that no debt upon which the judgment was based existed, said:

"The defendant insists that this judgment is conclusive evidence of the debt, for which it was rendered; but, if this be so, the plaintiff's land might be sold under a judgment confessed subsequently to his deed for a debt alleged to be prior, although he could prove that the debt was feigned, and the judgment covinous and fraudulent as to him. This is certainly not the rule of law, nor of justice. If a judgment between other persons be given in evidence to affect the rights of a third person, neither party nor privy to the judgment, he may show

that it was set on foot by covin, and thus avoid it. The plaintiff here was neither party nor privy in respect of land which he held by a previous deed from the father."

This language is very pertinent to the case in hand.

Nor is Philip Wilkey concluded by the proceeding in the orphans' court of Fayette county. Russell v. Place, 94 U. S. 606, 608. That proceeding related to personal estate. It did not at all concern this land. Moreover, Philip was not a party to that proceeding, and was not before the auditor.

### Finding of the Court.

The parties, by stipulation in writing, having waived a jury, and agreed upon a trial of the issue of fact by the court, this cause accordingly came on for trial by the court, without the intervention of a jury, on the 24th day of November, 1896; and on that day and the succeeding day the court fully heard the parties and the evidence submitted by them, respectively, and the arguments of counsel; and now, this 27th day of January, 1897, the court, upon due consideration, finds in favor of the defendant.