## Chambers *against* Spencer.

A husband and wife having joined in a deed of conveyance of land which contained a covenant of general warranty, in an action of ejectment for the same land, where the question was whether that conveyance were not fraudulent under the statute of 13 Eliz., it was held that, the husband being dead, the wife was a competent witness, to repel the allegation of fraud.

A voluntary conveyance to a child, by a father who was indebted at the time, is not, *ipso facto*, fraudulent and void under the statute of 13 Eliz.; if the grantor had other property at the time, or was otherwise of sufficient ability to pay all his debts, it will be referred to a jury to determine, whether there was any design to defraud creditors; if there was not, the conveyance is valid.

WRIT of error to the common pleas of *Butler* county.

This was an action of ejectment by James Spencer against Lewis Chambers in which both parties claimed title under Guy Hilliard. All the facts of the case are fully stated in the opinion of the court.

*Gilmore* and *Sullivan*, for plaintiff in error, cited White *v.* Shriver, 2 *Watts* 471; Thompson *v.* Dougherty, 12 *Serg. & Rawle* 456; 6 *Peters Cond. Rep.* 277; 11 *Wheat.* 199 ; 5 *Peters' Cond. Rep.* 428.

*Purviance* and *Evans*, contra, cited 12 *Serg. & Rawle* 456; 8 *Wheat.* 229; 1 *Rawle* 131.

The opinion of the Court was delivered by

HUSTON, J.—The cause comes before us on a state of facts contained in the charge of the court and documents referred to, and on a bill of exceptions to testimony.

Guy Hilliard, Sen., in April 1826, was the owner of lands and personal property, and had sons and two daughters. It would seem, the sons, to use his expression, were all *fixed*, i. e., as I understand it, settled in the world, and living separate from him. That he was very old, and his two daughters had lived many years with him and their mother, and had been very industrious; had worked in the house and on the farm; had spun and wove for money to pay the father's little debts, and hired themselves to strangers, for the same

[Chambers v. Spencer.]

purpose; and thus, beside assisting to support their parents by labour on the farm and in the house, had paid the small debts by working for strangers. One of them, and I suppose her to be the youngest, was seven or eight years above twenty-one, and, in 1826, single. The other was then married to Campbell.

Guy Hilliard, about this time, told a neighbour that the girls had been with him when settling the land. That his sons had got all fixed (settled) and he would give each of the girls 100 acres, which would leave 100 acres, and that would pay his debts; said the girls had kept the family; and this was proved by others; said he had paid for his son Guy's land, and on a fair settlement did not owe him; (it appeared that Guy made claims against his estate but recovered nothing.)

On the 11th of April 1826, he conveyed to his son-in-law Campbell, 100 acres, as the deed expressed, for the consideration of 100 dollars; same day a deed for another 100 acres to Anne (now Mrs Chambers,) wife of defendant below, and for the same consideration.

The same day he conveyed to his son John another 100 acres, and the consideration was, that John was to support Guy Hilliard, Sen., and his wife, during life. We have not the deeds but it was stated and admitted that they were with general warranty, signed and duly acknowledged by the wife of Guy Hilliard, Sen., and all recorded. The old man lived less than two years after this.

We are not left to conjecture as to the amount or value of his real and personal estate at this time. His administrators procured an order of the orphans' court, and sold the 100 acres, which he had reserved to pay his debts, and which he said would pay all his debts, and it produced 150 dollars; his personal property sold for about 100 dollars; and that with one or two small debts due to him and settled, and accounted for by his administrators, amounted to 274 dollars.

The debts he owed at his death were as follows; a sum to H. M. for which he obtained a judgment the 29th of April 1828, for ............................................................ $ 34 25

A debt to his son Alexander, for which there was a judgment before a justice, the 10th of September 1820; and which with its interest when a transcript was filed in 1832, amounted to ..................................................................... 42 45

Other debts, as agreed on by counsel in a paper signed, 18 50
　　　　　　　　　　　　　　　　　　　　　　　　　　　　 ─────
　　　　　　　　　　　　　　　　　　　　　　　　　　　　 $ 95 20

It was in proof that the land, conveyed in April 1826, was not worth more than one dollar per acre, that now by the labor and improvements of Chambers, who, it seems, bought out Campbell, it is worth 1000 dollars.

The account of the administrators of Guy Hilliard, Sen., were

[Chambers v. Spencer.]

settled, and they charge themselves with 274 dollars, and take credit for 283 dollars, without having any part of Alexander Hilliard's debt of 42 dollars and 45 cents, or it would seem of H. M.'s, of 34 dollars and 25 cents, which, in 1834, was assigned to Alexander. The administrators' credits are made up of costs, their own charges, and in short of any thing but payment of debts of the intestate. No objection to their account was made by him or creditors.

The first exception is, Mrs Hilliard, the widow of Guy the elder, and who joined him in all the conveyances, was offered by the defendant as a witness to prove that the consideration mentioned in the deeds was paid, and that they were not fraudulent or voluntary. She was objected to, " on the ground that she was a grantor in the said deeds and could not be a witness to prove that her husband had not acted fraudulently."

We have not the deeds before us, but it is stated that there was in each of them a clause of general warranty. In England a feme covert is bound by the warranty in a fine levied jointly with her husband and covenant lies on it against her after the death of her husband. Wotton *v.* Hele, 3 *Saunders* 180. In this state we have no fine, but a married woman passes her interest by joining her husband in a deed and her separate examination gives effect to the conveyance, to pass as well lands in her own right as to extinguish her right of dower in lands of which her husband was seized during coverture. If there be a clause of warranty in such deed executed by the husband and wife, and the husband dies and the grantee is evicted, we have in this state, I think, no case deciding on the liability of the wife on the covenant of warranty. That fact would go far to show she had not been considered liable. It seems to have been decided in Massachusetts, 7 *Mass.* 21, 291, that the doctrine of Wotton *v.* Hele, is not applicable to cases of acknowledgments by married women, of deeds made with their husbands, and this court incline to the opinion, that it also has been uniformly so held here. The matter having arisen incidentally in this case was not fully argued. Another objection to admitting the testimony was that it is against the policy of the law. Without entering into all the cases and the distinctions as to when a wife may be admitted or when she is to be rejected *during* the life of the husband, we are of opinion that, after the death of the husband, and when he is not and cannot be answerable civilly nor criminally, the wife may be admitted to prove facts or contracts or transactions in which her husband was a party, where such proof is essential to the justice of the decisions of cases between other parties. The testimony of Mrs Hilliard was improperly rejected.

But objections are made also to the charge of the court. Where a law of the country enjoins that something shall be done, or not done—or declares certain acts or doings valid or invalid, it might seem not difficult to decide on cases arising under such law. By it we know that even in such cases, and under such laws, a variety of

[Chambers v. Spencer.]

opinion has occurred. But here we have to decide on a case, arising under an act of parliament, (adopted here), by which the instrument is only void when executed with a certain intention, and then only void as to certain persons, viz. those actually injured or intended to be injured by it. And as might be expected, the cases under this law are not only different in different countries where it has been adopted, but also in the same country and courts at different periods. On a full examination of the cases, the difference will be found to be apparent oftener than real. In England and some of our sister states those cases occur most frequently before a court of chancery, and chancery. professes to decide by certain fixed principles, but each case is to be minutely examined and to be determined on the question whether under all the facts and circumstances, it comes within the principle; and it is sometimes said every case is there decided on its own circumstances. Chancellors have constantly been endeavouring to establish general rules, but have also been constantly employed in deciding whether the case before them came within the general rule.

That act provides, that "for the avoiding feigned, covenous, and fraudulent feoffments, &c., which feoffments, &c., are devised and contrived of malice, fraud, coven, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors of their just and lawful actions, &c., not only to the let or hindrance of the due course and execution of law and justice, but to the overthrow of all plain dealing, &c., between man and man, be it enacted, &c., that all and every feoffment, &c., made to or for any intent or purpose before declared and expressed, shall be deemed and taken (only as against that person, &c., whose action, &c., shall or might be in anywise disturbed or hindered, &c.,) to be clearly and utterly void."

The sixth section provides, that " this act or any thing therein contained, shall not extend to any estate or interest in lands, tenements, &c., had, made or conveyed, &c., or hereafter to be had, made, or conveyed, &c., which estate or interest is or shall be upon good consideration, and *bona fide* conveyed or assured to any person, &c., not having at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such coven, fraud, or collusion as is aforesaid."

The plaintiff in this case, claims under a sale made on a debt due previous to the deeds under which defendant below claimed, and certainly the general rule established is, that deeds made by a person at the time indebted, for any other than valuable consideration, are to be held void as against such prior creditor; but this general rule is in other cases modified. A man worth 5000 dollars may owe 1000 dollars to one or to several persons; may he not give to a child any thing, any property, real or personal, (for although I have only cited the words of the act relating to lands, yet its words include gifts " of goods or chattels") or does the rule only extend to conveyances of all a man's property, or to conveyances of so much

of it, as not to leave enough to pay his debts? What is to be understood be the phrase, a person indebted at the time ? This matter has been considered, see Sexton *v.* Wheaton, 8 *Wheaton* 247–250, and the cases there cited; and I prefer to cite them from that book, because the approbation of that court adds 'much to the weight of authority. There a settlement of all a man's estate on his wife and children was held valid, though he was indebted 500 pounds, at the time, because that debt was secured by mortgage.

At some pages we find observations as to existing debts—and it is said a single debt will not do. Every man must be indebted for the common bills of his house, though he pays them every week. It must depend upon this, whether he was in insolvent circumstances at the time." I would not go so far, but I would say it would depend on whether his debts were of such amount as to render it doubtful whether the creditors would be paid, or could collect their debts from the remaining property.

In the case before us Guy Hilliard left a property to pay his debts, viz: 100 acres of land. That property at a judicial sale produced 150 dollars, one third more than the whole of his debts. On his death that property was by law as specifically charged with his debts, as if the creditors had a mortgage on it. The order of paying debts is fixed by law, and after funeral expenses and the doctor's bill (less than 15 dollars in this case) judgments come in, and this was the only judgment. When sold by order of the orphans' court the administrators gave bail to apply the money according to law. Hines's lessee *v.* Longworth, 11 *Wheaton* 213. "A deed from a parent to a child, for the consideration of natural love and affection, is not absolutely void against creditors. It may be so under certain circumstances; but the mere fact of being in debt to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and *that the gift to the child was a reasonable provision according to his state and condition in life, leaving enough for the payment of the debts of the grantor."* The want of a valuable consideration may be a badge of fraud, but it is only presumptive, and not conclusive evidence of it, and may be met and rebutted by evidence on the other side. Before leaving that case I will observe, that the deed there objected to, was to a son, and the consideration expressed, was for *love and affection*—after the plaintiff had proved debts due by the father, the grantor, and given other evidence to show fraud, the son who was defendant offered to prove that the father was indebted to the son to an amount equal to the value of the property conveyed to him, for the purpose of repelling the presumption of fraud in fact; and to show there could have been no intention of putting his property out of his hands without receiving any consideration—this had been objected to and rejected, but the supreme court of United States, directed it to be admitted, to rebut the presumption of fraud arising from proof by the plaintiff of circum-

[Chambers v. Spencer.]

stances out of the deed itself; the plaintiff had given evidence that the father was indebted to others, and this as raising a presumption that his deed to his son was fraudulent; to rebut this presumption, the son was permitted to prove that the father was indebted also to the son, to an amount equal to the value of the property conveyed to him.

In our own state, the cases have generally, if not always, turned on the particular circumstances of the case. Rundle *v.* Murgatroyd, 4 *Dall.* 304, decides that a man notoriously insolvent, and who immediateley afterward was declared a bankrupt, could not make a valid provision for his wife and children, and Smith, J., says: It is a sound and uniform rule that settlements made upon a wife and children, by persons who have *not a sufficient estate to pay all their debts are void against creditors.* To this rule we agree, but does it apply to deeds made by those who have sufficient estate left to pay all their creditors? and if it does apply, does it not go to sanction such deeds? In the last case Judge Smith refers to the case of General Stewart's widow, which is given in a note. In 1793 General Stewart made a conveyance of extensive property in trust for his wife; he was then considered rich. In 1796 he died and was then supposed to be rich, but it was soon discovered that his estate was insolvent. There was no proof, however, that he was not solvent in 1793. The deed in favour of the wife was supported by M'Kean, Shippen and Smith, Justices. I lay out of view that he had received a large portion with his wife, and made a parol promise to make a settlement on her, because those facts, as strongly urged, were laid out of view in Murgatroyd's case; and the two cases are consistent, on the principle that a provision for a wife or child may be good, if made by a man in good circumstances, and void if made by one insolvent at the date of such provision.

In Thomson *v.* Dougherty, 12 *Serg. & Rawle,* it is said, a provision for a man's family, made by a person not indebted at the time, but who is just engaging in an extensive business, in which he must adventure and risk, may or must be considered fraudulent. This may be admitted, and I would admit it with some limitation.

The case and the exception that it may be considered fraudulent, if made in contemplation of future and immediate risk and loss, would seem to admit it would be good, if no such risk or adventure was contemplated; and so it was held in the case cited, 8 *Wheaton* 247.

In the case before us Guy Hilliard did not contemplate engaging in any business, on the contrary, he made provision for the support of himself and wife on retiring from all business, and in fact never contracted any debt afterwards except a small bill to a physician.

The case of Mateer v. Hissim, 3 *Penns. Rep.* 160, has some resemblance to the present case, and was fully considered here. In that case as in this, the grantor retained at the time, and all his life, more than enough to pay the bdet in question—and if lost, it was

v.—*3* B

[Chambers v. Spencer.]

lost by the misconduct or misfortune of the grantor's executors, and neglect of the creditor.'

It is admitted there may be cases in which the court ought to tell the jury that the circumstances proved made out a case of fraud, as in the case of Rundel *v.* Murgatroyd, 4 *Dall.* 304. But there are other cases in which the inference of fraud is not irresistible, as the cases cited from Wheaton, the case of Stewart, 4 *Dall.* and the case last cited of Mateer and Hissim; and we are of opinion that it ought to have been submitted to the jury to find whether there was a fraudulent intent in making the deed, for the lands in question;—and if there was no fraudulent intention, if enough and more than enough, to pay double the amount of debts, was retained at the time of making the deeds, and at the death of the grantor; if the property conveyed was not more than a reasonable provision for the grantee, considering the circumstances of the grantor; and, especially, if the jury find that the land, or most of the price of it, was justly due to the grantees, for money and services rendered after they were of age, and in making the settlement which gave title to the land, the deeds may be valid though the plaintiff's debt was then due, and though the administration accounts show 280 dollars expended in settling an estate of 270 dollars; and this, too, leaving almost all of the testator's debts still unpaid. It was the duty of Alexander, as a judgment creditor, to see that the administrators, who got an order to sell land to pay him, did pay him; and not to suffer the money raised by sales of intestate's estate to be diverted from its proper and legal course; and then to seek redress by alleging fraud in a transaction which a jury may perhaps find to have been perfectly fair, not unjust and not intended to do injustice to any person. It is not easy to see how matters, not foreseen, and which occurred after a man's death, can render void a deed made in his lifetime, and which a jury may find was fair and valid when executed and as long as the grantor lived.

Judgment reversed, and *venire de novo* awarded.