## Miller *against* Pearce.

If one procure a deed of conveyance of land to be made to him upon the promise and assurance that he will hold it in trust for another, that trust may be established by the parol testimony of the grantor.   And if the land be sold by the grantee, the *cestui que trust* may maintain an action against him to recover the price.

ERROR to the District Court of *Allegheny* county.

This was an action of *assumpsit,* brought by Thomas Pearce against James Miller.   The plaintiff claimed $700, with interest from the 7th May 1838, for so much money had and received.

Abraham Pearce, father of the plaintiff, some time previous to the 31st December 1833, owned a small tract of land containing about 40 acres, in Pine township, on which he resided, and on that day by a deed in which he was joined by his wife, duly executed and subsequently acknowledged and recorded, he conveyed the tract to the defendant for the consideration in the deed of $430. At the time of the conveyance Abraham was indebted to sundry individuals to the amount of about $275; one debt amounting to about $30.   One of his horses had been levied in execution, and he was in hourly expectation that other executions, to the amount of about $130, would be levied upon the small tract on which he resided.   He was possessed of real property other than the small tract, which was estimated as worth $1000 or $1200, and personalty subject to execution, worth perhaps $100 more.   During the existence of this state of embarrassment, Abraham, having consulted the defendant, was advised by him to convey the tract in controversy to him, as the best means of saving it from the grasp of his creditors, and compelling them to resort to his other tract; and, in pursuance of such advice reiterated both to him and his wife, he consented to make a voluntary deed to the defendant of the 40 acre tract; and the defendant, as an inducement to persuade him and his wife to execute the deed, declared that he would hold the tract in trust for his son, the plaintiff, and that he would con-

[Miller v. Pearce.]

vey it to him when he came of age, or that if he sold it, he would pay him over the purchase money on his arriving at the age of 21 years. Under this inducement (no consideration in fact having passed between the grantor and grantee) the deed referred to was executed. The defendant afterwards sold the land; and although he accounted with the plaintiff's father for the rents before the sale, he refused to account for the purchase money, the whole of which, it was admitted, he had received.

To prove all the facts as contained in the foregoing statement, the plaintiff offered Abraham Pearce as a witness.

The defendant objected for the following reasons: —

1. That it is an attempt to prove a sale of land rendered void by the statute of 13 Eliz. cap. 5.

2. That the witness offered is the grantor in an absolute deed, which contains a covenant of general warranty duly acknowledged, and is therefore not competent to invalidate it.

3. That the witness being bound by the warranty, is incompetent to testify for his son until he be released.

4. That it is not competent to prove by the witness a consideration different from that contained in the deed.

5. That the plaintiff cannot allege and prove a fraud on the part of his father, and predicate his right to recover in this suit upon it.

The court overruled the objections and sealed a bill of exception.

SHALER (President) was of opinion that there was no legal difficulty in the way of the plaintiff's recovery; and if the jury believed the facts as alleged by them, their verdict should be in his favour.

*Woods,* for plaintiff in error, cited 2 *Black. Com.* 295; 11 *Serg. & Rawle* 164; 2 *Watts* 187; 1 *Binn.* 519; 4 *Whart.* 519; 15 *Mass.* 207; 9 *Watts* 461; 1 *Chit. on Con.* 34; 2 *Black. Com.* 442; 5 *Serg. & Rawle* 425; 9 *Watts* 42; 10 *Watts* 204; 7 *Watts* 434; 3 *P. R.* 94; 3 *Whart.* 355; 4 *Yeates* 280.

*Gilmore,* contra, cited 1 *Dall.* 447; 3 *Binn.* 302.

The opinion of the Court was delivered by

HUSTON, J. — The defendant here was the plaintiff below, and made out the following case. In the autumn of 1833 Abraham Pearce and his wife owned the lot of land in question, on which were the buildings in which he lived and about 30 acres cleared, with fruit-trees, &c. The whole lot contained 43 acres. He also owned a tract at some miles distant, containing 300 acres, on which were some small improvements. The value of this last was put, by different witnesses, at from $1000 to $1500. A constable had levied on one of his horses for about $30, and removed him to Miller's, who lived near and kept a tavern. A. Pearce went to Miller's to borrow the money to pay that debt. Miller proposed

to him that it would be best to convey the small tract on which Pearce lived, to him, and stated to him: "You owe M'Kinney $80, and Burns $50, and Frederick Magee has bought those two debts, and wants your little place, and has bragged that he would levy on it and buy it from the sheriff." After some conversation, Miller said: "Sell it to me, and make a good deed, and when Thomas comes of age I will convey it to him. If you can't pay your debts, let them take the new place." (Thomas was an only child, then about sixteen years old, and the party to this suit.) This was agreed to. Pearce went home and stated this to his wife, who would not agree. He told Miller this, who went to Pearce's house and persuaded Mrs Pearce to agree; but, on reflection, she again refused. Miller went to her again. To induce her, he promised that he would never reconvey to her husband, but keep it till her son was of age, and convey it to him, or, if sold, give him the money. This occurred again; and, after the deed was drawn, and Pearce and wife at the magistrate's to execute it, she again hesitated, and the same promise was again solemnly repeated on his honour and honesty as a man. The deed was made. Pearce was paid $30, and nothing more; and no note or bond given. The price in the deed was $430. Pearce, after leaving the justice, returned the $30, and Miller went and paid off the execution and took a receipt. Pearce worked for him to the amount, and Miller gave him up the receipt. Miller leased the land on the shares, and Pearce got the grain; when he leased it for money, that went to Pearce. There was evidence that Pearce was an imprudent and intemperate man. What seems conclusive, as to this fact, is, that to induce his wife to sign the deed, Miller had to promise, and did promise, never to reconvey to Pearce, but to keep it for the son, when he came of age; which shows that Miller, the nearest tavern-keeper, and his wife, the two persons who knew him best, thought him incapable or unfit to be trusted with property. This is the outline of the evidence. Miller gave no proof that before or after he paid any money to Pearce, or any debts except the $30 to redeem the horse. Pearce's father had left a legacy to Thomas, the plaintiff, and Pearce was appointed his guardian, and got that. A brother died unmarried, and he was entitled to a share of his property; and with these he paid off all his debts. In 1836 Miller sold the land in question for $700; and since that Pearce got nothing except some oats from the place. Thomas Pearce was twenty-one years old in 1840, and in that year brought this suit. Abraham Pearce and his wife were offered as witnesses; objected to, but received. The details of the transaction were principally proved by them; though, as the Judge observed, it was much corroborated by other witnesses, and by the rents going to them, and by no shadow of proof that Miller before or after the deed paid any money to Pearce or for him.

The Judge submitted the whole evidence to the jury. He cited

*Posten* v. *Posten,* (4 *Whart.* 40) ; *Chambers* v. *Spencer,* (5 *Watts* 410), that a voluntary deed of part of a man's land was not fraudulent and void if he retained other property sufficient beyond a doubt to pay his debts. Here he referred to the evidence, uncontradicted, as to the amount of personal estate being about $180, and real about $1000. As to the admission of the witnesses, he relied on *Thompson* v. *White,* (1 *Dall.* 424) ; a case much resembling the present in all its parts. He said : " you should require the most satisfactory evidence, coming, as in this case it does, from the grantors, and making out a trust for their son. A plaintiff is bound to make out a strong case indeed, when he attempts to give, as it were, a new existence to a deed, and change its tenor in his favour ;" and he referred to the testimony and facts of the case. In answer to a question, he said ; " if the testimony is believed, the plaintiff may support this action of *assumpsit.*"

The errors insisted on here were the admission of the testimony, and saying, if the jury believed the testimony, it made such a case of fraud and trust as took the case out of the statute of frauds and perjuries. The cases cited and relied on by the plaintiff in error all differed from this in the fact that the confidence reposed, and the contract itself, were not occasioned by the act and solicitation of the party charged. The case of *Thompson* v. *White,* (1 *Dall.* 424), was proved by the grantors in the deed. The deed was made in that form, and executed on the most solemn assurance of the grantee, that by deed or will he would carry out and effect the trusts intended and confided to him. In *Sheriff* v. *Neal,* (6 *Watts* 540), Judge KENNEDY, in delivering the opinion of this Court, says : " equity will not permit one to hold a benefit which he has derived through the fraud even of another, and much less will it do so if he has acquired it by means of his own fraud. This principle seems not only to be just, and to commend itself strongly to the moral sense, from the bare statement of it, but it has been acted upon and made the foundation of a series of decisions ;" and he then cites cases, beginning with *Precedents in Chancery, p. 3,* and ending with 1 *Rus. & Myln.* 53, and sundry cases in our own reports ; for which I refer to that case. Let it be understood, we do not speak of a case of a fraudulent deed, which is the contrivance and act of the grantor, but of one procured by the solicitation of the grantee ; one never thought of, and which, probably, never would have been thought of by the grantor, and, in this case, obtained from a person, by the admission of the grantee, not fit to be trusted with the title to property, either from original incapacity or from intemperate habits.

The Judge of the District Court distinctly told the jury, that if Pearce contrived and executed this business, it was one thing ; if Miller first proposed it, and persisted in soliciting the conveyance ; if it was throughout, up to the execution of the deed, contrived and procured to be done at the persevering solicitation of Miller, pre-

[Miller v. Pearce.]

tending to be, and believed to be a friend, it was a different thing; and if the jury believed that this was made out by the testimony, the plaintiff might, and ought to recover.

Considering this deed as a voluntary conveyance for his son by a person indebted, it is not void on that account.  He had property beside this, equal, at the lowest estimate of its value, beyond four times his debts.  In *Posten* v. *Posten*, (4 *Whart.* 40), SERGEANT, Justice, in delivering the opinion of this Court, says; the rule that a conveyance is ~~not~~ void simply because a man is indebted, has uniformly been held not to be law in Pennsylvania.  It is good if he still has property, which, in the common course of dealing, is amply sufficient to secure his creditors; and cites several cases, to which add *Chambers* v. *Spencer*, (5 *Watts* 410); and this doctrine is now distinctly recognised as law in England; see 4 *East* 1, which is cited with approbation in 2 *Johns. Ch.* 308.

Judgment affirmed.