## DEAN v. CONNELLY.

In a proceeding before two justices and the jury of inquest, instituted, under the provisions of the act of 16th of June, 1836, by a purchaser at sheriff's sale, to obtain possession of the lands purchased by him, the sheriff's or coroner's deed, duly acknowledged and certified, is made by the said act full and conclusive evidence of the purchase, before such justices and jury.

In such case, the only question submitted to the justices and jury, is, whether there is a sheriff's or coroner's deed, in fact and in form, duly acknowledged in open court, and duly certified, under the seal of the court: it was never intended, by the act of 1836, to make such tribunal a court of error to examine the regularity of the proceedings in court, as to the judgment, process of sale, and execution of the deed.

Where a proceeding, which was commenced before two justices of the peace, by a purchaser at sheriff's sale, under the provisions of the act of 1836, to obtain possession of the lands purchased, came into the Court of Common Pleas, on the oath of the person in possession and recognisance entered into, under the provisions of the said act, the sheriff's deed, properly acknowledged and certified, is evidence: although the acknowledgment was taken after the expiration of the term of office of the sheriff who sold the same, and was not delivered to the purchaser until some time after the acknowledgment.

In such case, the person in possession becomes the actor in court, asserts the nature of the title under which he claims, and admits the judgment and sale, and must establish that he claims under a title paramount and different to the one sold by the sheriff, or he will fail.

The record of the proceedings before the justices is proper evidence to show when they were commenced.

Recitals in deeds are only evidence against the parties thereto, or, at most, against those who claim under such deeds, and are not evidence against strangers.

If a judgment, under which a sale of lands was made, were paid before the sale; the defendant, if he allowed the sale to proceed, and an innocent purchaser to pay his money, without an application to the court to stay the execution or refuse the acknowledgment of the deed, he cannot have the right, in a proceeding to obtain possession, to defeat such sale.

Whether, in making a sale, a design to defraud existed, or not, is properly referable to a jury; and the court cannot, lawfully, withdraw facts from the consideration of the jury.

If a party to a contract of purchase knows that it is fraudulent, his purchase, even for a valuable consideration, is not *bonâ fide.*

In error from the Court of Common Pleas of Luzerne county.

July 13. This was a proceeding commenced before two justices of the peace, to obtain possession of ninety-nine acres of land, purchased at sheriff's sale, in which Thomas Connelly was plaintiff, and John R. Dean and Philip Bowman defendants. The purchaser of the land at sheriff's sale, which was sold as the property of Warren Arnold, was Miner S. Blackman, to whom the sheriff acknowledged his deed, dated 4th of November, 1841, in open court, and to whom he delivered the same. Miner S. Blackman, on the 29th day of January, 1842, assigned all his right, title and interest in the pro-

perty conveyed by the deed, to E. L. Dana, who, on the 23d of July, of the same year, assigned the same to Thomas Connelly, who instituted this proceeding. On the hearing before the justices, John R. Dean, one of the defendants, (whose tenant, Philip Bowman, the other defendant, was in possession,) appeared, and made the oath, and entered into the recognisance prescribed by the act of 16th of June, 1836; whereupon, the proceedings were transferred into the Court of Common Pleas. As the facts of this case are fully stated in the charge of the court below to the jury, and as the charge was excepted to by the defendants, the material parts are here reported, and adopted as the statement of the case. On the trial before Jessup, P. J., at a special court, the plaintiff offered deed, dated 4th of November, 1841, of C. Atherton, sheriff of Luzerne county, acknowledged by him on the 13th of January, 1842, and after the expiration of his term of office. Objected to by defendants, because the acknowledgment was taken after the expiration of the sheriff's term of office; and at the same time, the defendants offered to show that the said deed was not delivered by the sheriff to the purchaser, until some time after the acknowledgment. The court admitted the deed in evidence, and rejected the offer to prove time of delivery of the deed. This was defendants' *first* bill. The plaintiff also offered E. L. Dana, as a witness, to prove service of notice on John R. Dean, to surrender possession. The defendants objected to the witness, on the ground of interest; but the court overruled the objection, and sealed defendants' *second* bill. The witness proved the service of the notice, dated the 16th of March, 1842, on the day of its date, on John R. Dean. The plaintiff then offered the notice, dated the 16th of March, 1842, signed E. L. Dana, and addressed to John R. Dean. The defendants objected to the notice; because, the notice was to deliver possession to E. L. Dana, who was not the purchaser at sheriff's sale, and the proceeding was not in his name; and because the proceedings were in the name of Thomas Connelly, and the notice was not to give up the possession to Connelly, but to E. L. Dana; and because the proceedings were against Dean and Bowman, and the notice was addressed to Dean only. The court admitted the notice in evidence, and sealed defendants' *third* bill. The notice was then read, as follows:

"To John R. Dean, Esq.:

"Sir,—I am desirous of obtaining possession of the premises sold at November Term, 1841, by the sheriff of Luzerne, on venditioni issued at the suit of Thomas Connelly *v.* Warren Arnold; as

which sale, Miner S. Blackman, Esq., was the purchaser, and who, by assignment, dated the twenty-ninth day of January, 1842, duly executed, passed his interest in the same to me. The premises are those described in the deed of the sheriff, to the said Blackman, ' a certain tract of land situate in Union township, in Luzerne county, and state of Pennsylvania, bounded as follows: on the south by lands of Zerah Marvin, east by lands of John Hess and Robert Sample, north by lands of John P. Shaw, and east by lands of John Johnson; containing ninety-nine acres, more or less, with the appurtenances.' This, therefore, is to notify and require you to surrender the possession of said premises to me, within three months from the date of this notice, as directed by act of 16th June, 1836.

"Respectfully yours, E. L. DANA.
"March 16, 1842."

The plaintiff also offered the proceedings before the justices, as filed on complaint of Thomas Connelly, on the 30th of July, 1842, against John R. Dean and Philip Bowman, together with the oath and recognisance of Dean, for the purpose of showing the time the proceeding was commenced. Objected to, and objection overruled. This was defendants' *fourth* bill. The defendants offered confirming deed of Warren Arnold and wife, to John R. Dean. The court admitted the deed, with the exception of the recitals therein, which were in the following words, and rejected: "which land I, some years since, for a valuable consideration, transferred and gave up to Stephen Arnold, the younger, thereby releasing to said Stephen, and to his heirs, my interest in said land; and whereas no deed or conveyance was then made, but since that period the said Stephen, the younger, has conveyed the same to John R. Dean." This was defendants' *fifth* bill. The defendants then offered to prove, by " C. Atherton, late sheriff, that his deed of the 4th of November, 1841, was not delivered nor executed; that the purchase-money was not paid; and that the deed was not acknowledged by him, until after he went out of office !" Objected to by plaintiff, and the court sustained the objection. This was defendants' *sixth* bill. The defendants then proposed to ask Judge Woodward, on cross-examination, whether the judgment on which this sale took place was not paid off before execution issued, and before sale made, to his knowledge. Objected to, and objection sustained. This was defendants' *seventh* bill. After the evidence was closed, the defendants requested the court to instruct the jury

on *six points;* but as the answers of the court to the fifth and sixth points are only assigned for error here, it is unnecessary to notice the others.

5. That if the jury find that Stephen Arnold held the legal title to secure liabilities incurred, or indebtedness, and that his vendee, Dean, paid liens upon the land when he took the title, that the plaintiff must have made tender of sufficient moneys to cover such payments before he could proceed a single step toward a recovery of the possession of the land.

6. There is no evidence in the cause to show that John R. Dean, the purchaser, acted otherwise than in good faith in the purchase of the land; and even should the jury find that Warren and Stephen were disposed to defraud Warren's creditors, that cannot affect Dean, unless he had knowledge of and participated in the fraud.

The charge of the court, so far as it is material, is as follows:

" The judgment upon which the sale was made was entered on the 10th day of June, 1833, and became and continued a lien upon all the interest which Warren had in the premises from that day. The *sci. fa.* having issued within the five years, and having been prosecuted to judgment as early as was in the power of the plaintiff, he did not loose his lien.

" The purchaser at the sheriff's sale having transferred to the plaintiff, he is entitled to all the rights of the original purchaser, and might properly institute these proceedings in his own name.

" The first inquiry, therefore, is, was Warren Arnold the owner of this land on the 10th June, 1833, when the judgment was entered? If he was, the plaintiff is entitled to recover against John R. Dean, the only defendant who appeared, to remove the proceedings from before the justices, and upon whom the proper notice appears to have been served before the commencement of the suit. No notice is proved to have been served upon Bowman, and no recovery can be had against him. It is also in evidence that he was the tenant of Dean, and that he, long since, left the premises.

" It appears by the evidence, that Warren Arnold held the possession of this land from 1818. He built a house, and had thirty or more acres improved. According to the evidence of Mr. Koons, he paid the purchase-money to the Commonwealth, and, to save expense, the patent was to be issued to the father, who gave a bond to convey to Warren his lot of one hundred acres when the patent should be obtained. By this arrangement Warren was the real owner; and being in possession of the land, his title could only be

divested by some act of his own. His possession was notice to all the world of his title, and his trustee could make no conveyance which should prejudice his rights.

" On the 27th April, 1833, Stephen Arnold, the younger, who had obtained a patent for the land, conveyed one hundred and five acres, one hundred and eight perches, to John R. Dean. This deed covers from sixty to seventy acres of the lot of one hundred acres belonging to Warren, and the greater portion of the improvements. This deed, upon its face, would make John R. Dean the trustee of Warren Arnold in the same manner that Stephen had been. We have no evidence of any bargain or sale between Stephen and Warren, nor of any payment except what is evidenced by the receipt given in evidence, and which is so much relied upon by the defendant's counsel, as conveying Warren's interest to Stephen. It is as follows:

" ' *Union*, May 10, 1831.

" ' Received this day from Stephen Arnold, twenty-five dollars, being in full satisfaction of a bond which I hold against him, conditioned for the deed of a piece of land, or five hundred dollars in lieu of non-compliance. Now, this is to clear said Stephen Arnold from said bond, which cannot now be found, being mislaid or lost.

WARREN·ARNOLD.'

" The court are called upon, in the first instance, to give a construction to this paper, and to decide whether, upon its face, it conveys any interest in these lands. The court are of opinion that this paper does not convey the interest of Warren to Stephen; for,

" 1. It does not appear that Stephen had given any such bond as is recited in this paper. The only bond of $500 was that given in 1818, by the father to Warren.

" 2. There is nothing in the paper which shows any intention to transfer the land.

" It rather appears an indemnity against a lost bond.

" 1. There is nothing definite as to the land, which was the subject of the arrangement.

" This paper, by itself, did not convey this land to Stephen Arnold. This paper, however, with all the other evidence in the case, must go to the jury, for them to ascertain whether Warren had parted with his interest in the land prior to the rendition of plaintiff's judgment. There is no evidence of any negotiations for sale between Warren and Stephen, nor of payment by Stephen to Warren of any purchase-money, (other than stated in the paper

before read,) so that this paper is the essential chain in the defendant's title; but is so connected with the other transactions between the parties, that the jury will consider the whole together.

"It is in proof, that Stephen Arnold, sen., on the 18th September, 1822, conveyed his interest in the warrant for four hundred acres to his son Stephen, taking from Stephen, to himself, a bond in $2000, conditioned that Stephen, jun., should comply with the bond given by the father to Warren. On the 10th May, 1831, the paper in question is dated; and on the 27th April, 1833, Stephen, jun., conveyed one hundred and five acres one hundred and eight perches to John R. Dean. After obtaining this deed, Dean, in presence of Levi Arnold, procured a lease, dated 21st May, 1833, from Warren Arnold for the premises. This deed and lease were prior to the entry of the judgment. But Levi Arnold, the subscribing witness, declares that the lease was not executed until a year afterward; that it was antedated; that at the time of signing it he mentioned the fact to Dean and Warren, who replied it would make no difference. There was some evidence that the character of Arnold was not good.

"Warren Arnold swears, that a deed was made to him, by his brother Stephen, acknowledged before Esquire Austin; that he laid the bonds he had of his father on the chest with his deed; that Stephen put them in the chest, and he has never seen the deed since, nor the bond, until it was produced on the trial in court. This evidence of his, is contradicted to some extent by his deed to Dean, of ——1837.

"In answer to the fifth point the court said, That there was no evidence that Stephen Arnold held the title to the land to secure any liabilities, or that there was any indebtedness of Warren to him, and if Dean chose to pay off liens, without any agreement, either with Warren or the judgment creditors, it would not raise an obligation on the part of the plaintiff, to refund to Dean the amount thus advanced, nor would there be any obligation to make tender before suit brought.

"To the sixth point. The court cannot instruct the jury, as desired, on this point. They cannot say there is *no* evidence that John R. Dean acted otherwise than in good faith in the purchase of the land.

"If the jury should believe that the paper of 10th May, 1831, was without consideration, that a deed was executed after that time by Stephen to Warren, upon which Warren gave up his father's bond, which deed and bond was kept by Stephen, then the trans-

action between the brothers looks very strongly like fraud. If, under these circumstances, Dean took a deed from Stephen, and then a year after, a lease from Warren, which was ante dated, so as to precede the plaintiff's judgment, and then, if the jury should believe the letter of Dean, of 1st January, 1834, and the evidence of Levi Arnold, that the lands referred to therein were lands in dispute, these things, with other circumstances in the case, would strongly implicate Dean in an attempt with Stephen and Warren, to defraud Warren's creditors."

To this charge, the defendant's counsel excepted; and upon the rendition of verdict sued out this writ of error, and assigned the following errors:

1. The court erred in admitting the evidence mentioned in the first bill of exceptions.

2. The court erred in admitting witness named in second bill of exceptions.

3. The court erred in admitting evidence contained in third bill of exceptions.

4. The court erred in rejecting the offer contained in fifth bill.

5. The court erred in rejecting the offer contained in the sixth bill.

6. The court erred in rejecting the offer contained in the seventh bill.

7. The court erred in their charge in reference to the paper of 10th May, 1831:

8. The court erred in that part of their charge where they say there is "no evidence of any payment of purchase-money being paid prior" to the plaintiff's judgment, by Stephen or by Dean, to Warren; the lease has no effect to defeat plaintiff's judgment.

9. The court erred in their answer to the fifth point.

10. The court erred in their answer to the sixth point, particularly in submitting the question to the jury, as to whether the paper of 10th May, 1831, was without consideration, when there was no evidence on the subject; and also in misleading the jury as to the evidence of Levi Arnold, who did not state the land in dispute was referred to in the letter of Dean of 1st January, 1834, as stated by the court.

*Harrison Wright* and *McClintock*, for plaintiff in error.—The defendant offered to show that the sheriff's deed was neither executed or acknowledged, until after the expiration of his official life; and that the money was not paid till it had been acknowledged. And in support of this point they cited the act of

1836, establishing a perfect and new system, for the executing and acknowledgment of the deed by the sheriff's successor, where, for any reason, it had not been done: also 2 Serg. & Rawle, 53. The sheriff's deed derives its validity from its execution, and this act is respected in law, 2 Yeates, 458; 10 Watts, 21. The acknowledgment recites the officer to be late sheriff. The practice is yet to be settled under the act of 1836; and they thought might as well be settled in this proceeding as in ejectment, which they were told was the action by which it was to be tested. If the point cannot be settled in this case, it must be settled in another.

The construction given to the paper of 10th May, 1831, is manifestly wrong. Warren held but an equitable estate in the lands, and this paper is, on its face, a surrender of that equity to the holder of the legal title.

If the notice by Dana was necessary to the plaintiff's recovery below—and it was—would not the notice cast upon him a liability for costs, if the plaintiff were insolvent? and, if he was in any way liable, he was improperly admitted to testify.

The court misled the jury, in saying to them, that the testimony of Levi Arnold connects the contents of Dean's letter with the lands in dispute; he did not so testify, and it was error in the court below; 1 Watts & Serg. 68; 1 Barr, 238; 5 Watts, 49, 275, 441; 2 Leigh, 655; 5 Watts & Serg. 84.

*Butler*, contrà, cited 6 Bin. 254; 2 Watts, 142; Dunl. Dig. 783.

*July* 20. COULTER, J.—The present case discloses a proceeding commenced before two justices of the peace, by a purchaser at sheriff's sale, under the provisions of the act of 1836, to obtain possession of the land purchased by him. The person in possession made the oath prescribed by the statute, and the proceeding was transferred to the Common Pleas, according to the provisions of the act. The plaintiff below exhibited the record of the judgment on which the land was sold, the levy, condemnation and sale, all by due process, and then offered the sheriff's deed, properly acknowledged in open court; to the admission of which in evidence the defendant objected, because " the acknowledgment was taken after the expiration of the term of office of the sheriff," and at the same time offered to show, " that the deed had not been delivered by the sheriff to the purchaser, until some time after the acknowledgment." The court overruled the objection thus made, and sealed a bill of exception, which makes the *first* and principal point in the case. The policy of rendering titles acquired by judi-

cial sale secure and certain, so far as a reasonable regard to established principles of law would admit, has been cherished by the legislature and courts of this state. Humanity requires that the property of the debtor brought to the hammer should bring a fair price; and that purchasers should not be hindered by technical niceties or formal difficulties. Where legal authority exists for the officer to make the sale, points of form are overlooked; and the title of the purchaser is good even where the judgment may be afterwards reversed for error. One of the obstacles which prevented a full and fair price being had at sheriff's sale, and not one of the least, was the difficulty of obtaining possession. Where the purchaser was turned over to all the difficulties of maintaining an ejectment, according to the admitted rules regulating controversies about contested rights of possession; they naturally took that into consideration, as regulating, in some measure, the price they were willing to give. To prevent difficulties of this kind was the intent of the summary proceeding before two justices to obtain possession, and by the 109th section of the act of 16th June, 1836, the sheriff's or coroner's deed, duly acknowledged and certified, shall be full and conclusive evidence of the purchase. It was not intended by the act to make the justices and inquest a court of error to try the regularity of the proceedings in court, as to the judgment, process of sale, and execution of the deed. The only question submitted to them is, whether there is a sheriff's or coroner's deed, in fact or in form, duly acknowledged in open court, and certified under the seal of the court. I do not think it necessary to say whether, after the acknowledgment, the alleged irregularity would be of any consequence in any court or under any circumstances; that question not being involved in this decision. But the evidence offered was abundantly sufficient before the justices and inquest. After the proceeding was transferred to the court by the making of the necessary oath on the part of the defendant below, a different issue and a new posture of the case was substituted. In order to protect the rights of all parties, the statute authorizes the person in possession to make oath, that he did not come in, nor claim to hold under the defendant in execution, or that he did come into possession under title derived from defendant before the judgment on which the execution and sale took place. The terms of the oath are, " that I do not claim the same, by, from, or under the defendant as whose property the same were sold, by title derived to me subsequently to the rendition of the judgment under which the same were sold, but by a different title." The person in posses-

sion thus becomes the actor in court, asserts the nature of the title under which he claims, and admits the judgment and sale. And part of his recognisance is, that if he fails therein—that is the trial—he will deliver up the said premises to the purchaser, &c. The defendant must establish that he claims under a title which governs and overrides the one sold by the sheriff, or else he fails; and therefore the judgment, execution, and sale are admitted, and are, in fact, part of the process. If the recognisance is forfeited by the defendant or person in possession, either on trial or by his not appearing, the justices are then to proceed and give judgment, and cause the real estate to be given up to the purchaser, &c. The court therefore did not err in admitting the deed in evidence. This view of the subject renders the other exceptions to evidence offered by the plaintiff, of but small importance. Dean was a competent witness to prove the service of the notice under the circumstances. And there is nothing whatever in the exception to the form and substance of the notice itself. It is quite sufficient in both points of view. The objection to exhibiting in evidence the record of the proceedings before the justices for the purpose of showing the time when they were commenced, was properly overruled. Those proceedings were part of the *res gestœ* of the whole case, and were necessary to give the court jurisdiction over the subject-matter, according to the act of Assembly. This statute, as well as that which preceeded it, is admirably adapted to the purposes which it was designed to accomplish, by securing to the purchaser at sheriff's sale a summary and speedy mode of obtaining possession, and by affording also to the person in possession, ample remedy, if he holds under paramount and different title from that which was sold by the sheriff. The *fifth* bill is to the rejection by the court of a recital contained in a deed of confirmation by Warren Arnold and wife to John R. Dean. This deed of confirmation by Arnold and wife was dated long after the judgment of the plaintiff, and would seem to have been designed to defeat that judgment. But recitals in deeds are only evidence against parties, or at most against those who claim under such deeds, and cannot be considered as evidence against strangers. The evidence offered by the defendant, and covered by the sixth bill of exception, is the same precisely as that offered to be given by defendant to prevent the reception of the sheriff's deed in evidence, and has been already considered. Plaintiff now gave some rebutting testimony, and called George W. Woodward, Esq. Defendant proposed to ask him, whether he did not know that the judgment on which the sale was made had been

paid before the sale. The court overruled the question, and sealed a bill of exceptions. The evidence was out of time and place; and if the defendant allowed the sale to proceed, and an innocent purchaser to pay his money, without any application to the court to stay the execution, or refuse acknowledgment of the deed, he ought not to have the right, in this proceeding, to defeat the sale. It would be against equity, and against law, as inconsistent with the claim of title alleged by him, in his affidavit: 1 Barr, 183. A number of points were submitted to the court, the answers to which are assigned as error; but all of them were abandoned on the argument, except the answers to the *sixth* point, which is the tenth assignment of error. That point is in these words: "That there is no evidence in the cause to show, that John R. Dean acted otherwise than in good faith in the purchase of the land, from Arnold; and even if the jury should find, that Warren Arnold and Stephen Arnold were disposed to defraud Warren's creditors, that cannot affect Dean, unless he had knowledge of, and participated in the fraud." The person in possession rested this part of his case upon the assumption or allegation, that Warren Arnold, the defendant, as whose property the land was sold by the sheriff, had made a parol sale of it to Stephen Arnold, who sold and conveyed it to Dean, to whom Warren Arnold made a deed of confirmation, reciting his parol sale to Stephen; and to which deed of confirmation reference has already been made. Connelly, the plaintiff, alleged that this transaction was fraudulent, and entered into for the purpose of defeating the creditors of Warren; and a variety of facts and circumstances were given in evidence on that subject. The court very properly declined to instruct the jury, as required in the first branch of the point propounded. They could not lawfully so instruct the jury; because, by so doing, they would have withdrawn the decision of the facts from the proper tribunal. In the general charge, the facts were fairly submitted to the jury, with instructions as to the law arising from them, as they might be determined, either one way or the other; which were quite as favourable to the defendant as the law allowed. In relation to the *second* branch of the *sixth* point, that is, whether Dean had a knowledge of, and participated in the fraud, the court enumerate certain facts and circumstances, which, if believed by the jury, would seem, as the court say, to implicate Dean in the fraud, but leave the determination of those facts to the jury. And in cases of this kind, whether a design to defraud existed, or not, is properly referable to the jury: 5 Watts, 404. The court were not bound to answer

in the affirmative, that it was necessary that Dean should have had knowledge of, and participated in the fraud. Because, if he knew that the contract as alleged, between Stephen and Warren, was fraudulent, his purchase, even for a valuable consideration, was not *bona fide*, and is therefore inadmissible to defeat creditors. Even if made upon a valuable consideration, it would be assisting one man to cheat another, with a full knowledge of the effect to be accomplished, which the law does not allow: Cadogan *v.* Kennett et al., Cowper, 434. This part of the case, from the evidence on the paper book, is strongly against the defendant; and the ingenious counsel for the defendant failed to satisfy this court, that the court below, taking their whole instruction on the subject to the jury, committed any error of which the defendant has a right to complain.

Judgment affirmed.