LOUISA FAY, GLADYS M. FAY and ROY ALTON FAY

*v.*

THORNTON W. FAY.

Where one of several tenants in common of land purchases the same at a master's sale thereof in partition, upon a parol agreement with his co-tenants to hold the same in trust for them, and uses their releases to the master for their share in the proceeds in payment of the purchase-money, without actually paying any money, a trust results in favor of the co-tenants.

---

On demurrer to bill.

*Mr. John J. Crandall,* for the demurrant.

*Mr. David J. Pancoast, contra.*

PITNEY, V. C.

The bill is filed by the widow and two children, heirs at law, of George W. Fay, deceased, against the defendant, Thornton W. Fay, who was the brother of the deceased, and its object is to

Fay *v.* Fay.

establish a trust in favor of the complainants, representing George W. Fay, deceased, in an undivided one-ninth part of certain real estate, situate, as to a part, in the county of Camden, and as to another part, in the county of Atlantic, of which Cyrus J. Fay, father of George W. Fay and the defendants, died seized.

The allegation is that a bill for partition of such real estate was filed in this court by William H. Fay, a brother of George and Thornton, for the partition of those lands, and that such proceedings were thereon had that the land was brought to a sale by special master, and that there were nine tenants in common, of whom George W. Fay was one. The bill then proceeds in this wise : That before and at the date of the special master's said sale it was verbally agreed by and between Thornton W. Fay and his brothers and sisters, the other heirs at law of their said father, tenants in common of the said real estate and parties to the said cause, except the said William H. Fay, that Thornton W. Fay should purchase the lands in his own name but in the interest and with the joint funds of the other heirs, excepting said William H. Fay, and hold the title for the common benefit of those concerned until the same could be more advantageously disposed of by the consent of those concerned ; and that, in pursuance of said agreement, Thornton W. Fay at the said sale became the purchaser of the whole of the real estate in his own name, and received a deed of conveyance from the special master, the consideration of which was $11,056 ; that the court adjudged that George W. Fay was seized of an undivided one-ninth part of the real estate and entitled to one-ninth part of the proceeds of the sale ; and that, in pursuance of his agreement, George W. Fay executed and delivered to the special master, without the receipt of any money, a formal receipt and release of his share and interest in the proceeds of the sale of the said real estate to Thornton W. Fay, being the sum of $1,194.51, in order that Thornton might have the benefit of it as so much purchase-money ; and that in this way the interest of George W. Fay, being an undivided one-ninth part of the proceeds of the sale of the real estate was, by the arrangement between him and his brother Thornton W. Fay, applied and used by the said Thorn-

ton towards the purchase of the real estate in his own name, upon the agreement and understanding that the share of George should be and remain in the said real estate so purchased by the use of his share in the name of the said Thornton.

The bill then proceeds to allege that Thornton has conveyed a portion of the real estate and has received as consideration money some $10,000 and upwards, and that a large and valuable portion still remains in his name unsold.

The prayer is that the complainants may have an account of the proceeds of the sale of such portions of the land as have been sold and also the rents and profits of the balance, and that their title to a one-ninth part of the part remaining unsold may be established.

The ground of the demurrer is that the verbal agreement set out in the bill is void by virtue of the statute of frauds, and that was the single point argued.

The bill does not show whether the sales of land by the defendant were made before or after the death of George W. Fay, complainant's father, and no question as to the rights of the complainants to an account of the proceeds of the sales, if they were made before the death of George W. Fay, was raised.

The argument of the defendant is that the land was not purchased by Thornton W. Fay with the money of George W. Fay, but that the effect of the proceedings in partition and the sale and conveyance by the master were the same as if George W. Fay had conveyed directly to the defendant; that the giving of a release to the master to be used by Thornton in settling with the master, and such use of it by Thornton was not, in effect, a payment of money by George.

I am unable to yield to this argument. I think that the delivery of the release and its use by Thornton was, in effect, a purchase of the property to that extent with the money of George. And that is all that is necessary. There is no charm in actual payment of money, as such. The release forever barred George from demanding the money from the master or from the purchaser. The effect of the transaction was the same as if George had handed to Thornton the amount of his share in cash, and Thornton had

Fay *v.* Fay.

paid it to the master, and George had received it back from the master and given the release for it.

The case is not without precedent. In *Donlin* v. *Bradley*, *119 Ill. 412* (at *p. 421*), the facts were that a married woman having several children died seized of certain lands intestate, leaving a husband who thereby became seized of an estate by the curtesy for life, while the remainder vested in the children, and the owners desiring to raise money upon the lands, a partition was resorted to, and, in pursuance of a common understanding between the parties, the premises were struck off to one of the children, who received a master's deed for them. Nothing was paid by him on his purchase. The children executed receipts for their several shares to the master. It was held in a suit precisely similar to the one now under consideration that a trust resulted in favor of the brothers and sisters. The court in dealing with the case said : " These receipts, representing appellees' interests in the land or its proceeds, having been treated and used in paying for the land as so much cash, must, for the purposes of this suit, be now treated the same way. Viewing the transaction in this its true light, there could not be a better illustration of a resulting trust."

In *Stewart* v. *Brown, 2. Serg. & R. 461,* the case was this : The plaintiff and defendant had a joint judgment against one Reed, under which they sold certain lands supposed to belong to Reed, but for which there was no title standing in his name, and purchased them, taking the title in their name as tenants in common. Some time afterward the same land was sold for taxes and the defendant bought them. The plaintiff alleged that this purchase was made under an agreement between the defendant and himself that each should be equally interested in the purchase. The agreement was by parol. The court below held it of no value. But Chief Justice Tilghman, on error, said: " If the defendant purchased at the sale for taxes under an agreement that the plaintiff should be equally concerned he would be considered in equity as holding for the plaintiff and himself as tenants in common." It will be here observed that the parties had a common interest in the land which was about to be sold for taxes. In the absence

CASES IN CHANCERY.

Fay *v.* Fay.

of such previous common interest a trust could not have been established except by writing.

*Miller* v. *Pearce, 6 Watts & S. 97*, tends in the same direction.

In *Lingenfelter* v. *Richey, 58 Pa. St. 485*, the case was that two persons owned each one-half of a survey of lands, and afterwards, by a parol agreement between them, a patent was procured to one .of them on the understanding that he was to hold for the benefit of both. It was held that a trust resulted and that the statute of frauds did not apply. See, also, *Woolford* v. *Herrington, 86 Pa. St. 39*.

In *Cutler* v. *Tuttle, 4 C. E. Gr. 549* (at *p. 559*), a solicitor of the court purchased property under partition proceedings and paid for it by the delivery to the commissioners of the receipts and releases of two of the parties interested. The purchase was of only a portion of the premises sold, so that the releases of two of three tenants in common were sufficient to pay for the land purchased by him. Justice Depue (at *p. 559*) uses this language : " The aggregate amount of the sums for which the three lots in question were sold to defendant at the commissioners' sale was $2,491. *It was paid by him by the delivery to the commissioners of the receipts and releases* both of the complainant and of Mrs. Anderson for their respective distributive shares of the proceeds of the sale amounting, together, to the sum of $2,305.82. The balance of $185.18 was paid by the defendant out of his own funds. To the extent of the amount represented by the complainant's own receipt to the commissioners the defendant admits ne holds the lands in trust for her benefit."

I quote this language simply as showing that the learned justice treated the delivery of receipts and releases as an actual payment.

The demurrer must be overruled, with costs.